UNITED STATES *v.* MERCK & CO. (Nos. 1793 AND 1796).[1]

1. CONSTRUCTION, PARAGRAPH 584, TARIFF ACT OF 1913—ABSURDITY TO BE AVOIDED—
   "SALTS OF CINCHONA BARK."

   A salt of cinchona bark is a chemical impossibility and the provision for "salts of cinchona bark" (par. 584, tariff act of 1913), if literally interpreted, is meaningless. The expression will be construed to mean salts of quinia.

2. CONSTRUCTION, PARAGRAPH 584, TARIFF ACT OF 1913—LEGISLATIVE RECOGNI-
   TION—"SALTS OF CINCHONA BARK."

   By the reenactment in successive tariff acts of the provision for "salts of cinchona bark" Congress must be presumed to have sanctioned judicial and administrative classifications of certain derivatives of cinchona bark as salts of cinchona bark. This provision, occurring in paragraph 584, tariff act of 1913, will not be given a meaning at variance with this line of decisions.

3. CONSTRUCTION, PARAGRAPH 584, TARIFF ACT OF 1913—AIDED BY CONTEXT—
   "SALTS OF CINCHONA BARK."

   The expression "salts of opium," occurring in successive tariff acts, has been administratively and judicially determined to have a definite meaning, and this meaning has been sanctioned by Congress in reenacting the provision. "Salts of cinchona bark" (par. 584, tariff act of 1913) will be construed harmoniously with this line of decisions.

[1] T. D. 37269 (33 Treas. Dec., 30).

4. Construction, Paragraph 584, Tariff Act of 1913—Aided by History of Paragraph—"Salts of Cinchona Bark."

The free list of the tariff act of 1913, as it passed the House, provided for "quinine and its combinations with acids and compounds, not subject to duty in this section." In lieu of this, the Senate restored the provision of former acts for "salts of cinchona bark," and the House accepted the Senate's amendment. This must be taken to mean that no salts of cinchona bark should be dutiable, but that all of them should be admitted free under paragraph 584, even though some of them may be covered by general language in other paragraphs.

5. Construction, Paragraphs 584 and 18, Tariff Act of 1913—Relative Specificity—Quinine Glycerophosphate.

With reference to quinine glycerophosphate, the expression "all * * * salts of cinchona bark" (italics ours), in paragraph 584, tariff act of 1913, is more specific than "glycerophosphoric acid and salts and compounds thereof" in paragraph 18, and classifies it.

United States Court of Customs Appeals, May 21, 1917.

Appeals from Board of United States General Appraisers, G. A. 7989 (T. D. 36819).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Albert H. Washburn, Henry J. Rode*, and *Charles A. Darius* of counsel) for appellees.

[Oral argument May 4, 1917, by Mr. Doherty and Mr. Washburn.]

Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

Smith, Judge, delivered the opinion of the court:

Quinine glycerinophosphate imported at the port of New York was classified by the collector of customs as a salt or compound of glycerophosphoric acid and assessed for duty at 25 per cent ad valorem under the provisions of paragraph 18 of the tariff act of 1913, which, in so far as pertinent to the case, reads as follows:

18. * * * Glycerophosphoric acid and salts and compounds thereof, * * * 25 per centum ad valorem.

The importers protested that the merchandise was a salt of cinchona bark, and therefore free of duty under that part of the free list which reads as follows:

FREE LIST.

That on and after the day following the passage of this act, except as otherwise specially provided for in this act, the articles mentioned in the following paragraphs shall, when imported into the United States, * * * * be exempt from duty:

584. Quinia, sulphate of, and all alkaloids or salts of cinchona bark.

The Board of General Appraisers sustained the protest and the Government appealed.

The Government contends, first, that the importation is not a salt of cinchona bark, and, second, that if the merchandise be a salt of cinchona bark provided for in the free list, it is at the same time a

salt of glycerophosphoric acid upon which duty has been imposed; and that in such a case the duty provision must prevail.

It is true that a salt of cinchona bark is a chemical impossibility and that the provision for salts of cinchona bark, if literally interpreted, is meaningless. It is evident, however, that such a provision must have meant something to Congress and that the expression "salts of cinchona bark" was intended to describe and identify certain substances which Congress had in mind. What those substances were was first determined by the Board of General Appraisers more than 12 years ago by a decision in which it was held that salts the dominating characteristic elements of which were derived from cinchona bark were salts of cinchona bark. Abstract 4752 (T. D. 26053). To the same effect was the decision of the United States Circuit Court of Appeals in United States *v.* Merck (168 Fed., 244), in which it was held that when Congress used the expression "salts of cinchona bark" it meant a salt which can be found in and extracted from such bark, and accordingly it was decided that euquinine, a salt derived from cinchona bark, was free of duty as a salt of cinchona bark. On the same principle it was held in Abstract 5493 (T. D. 26218) that codeine was an alkaloid of opium, although not derived from opium but from meconic acid and morphia, derivatives of opium. In the same case it was also decided that codeine sulphate and codeine phosphate, the result of the chemical combination in one case of sulphuric acid and codeine and in the other of orthophosphoric acid and codeine, were salts of opium. The reasoning of those cases was expressly approved in Merck *v.* United States (6 Ct. Cust. Appls., 41–42; T. D. 35315), in which this court, construing a provision for "salts of opium" in paragraph 43 of the tariff act of 1897, took occasion to say that a literal construction of the provision would render it meaningless and ineffective, and that to make it operative an interpretation must be put upon it other than that to be implied from the literal signification of the words actually used. It was accordingly held that the expression "salts of opium" should be interpreted to mean such salts as are produced by the chemical action of an acid radical on organic bases derived from opium. That those decisions were not at variance with the intention of Congress is established by the fact that in every tariff act since their rendition provisions for salts of cinchona bark and salts of opium have been reenacted. We therefore consider it definitely settled, not only by judicial decisions but by legislative approval thereof, that a salt of quinia is for tariff purposes a salt of cinchona bark.

We now come to the consideration of the question whether the merchandise in issue, which is a salt of glycerophosphoric acid and at the same time a salt of cinchona bark, should be subjected to

duty as a salt of glycerophosphoric acid or admitted free as a salt of cinchona bark. Ever since 1883 quinia and its salts have been admitted free of duty. The free-list provision of the tariff act of 1883 was "quinia, sulphate of, salts of, and cinchonidia." The free-list provision of the tariff act of 1890 was "690. Quinia, sulphate of, and all alkaloids or salts of cinchona bark," and that paragraph has been reenacted in exactly the same words in every subsequent tariff act. For 30 years prior to the passage of the present tariff act, salts of quinia or cinchona bark have been admitted free of duty, and the provisions which secured them free entry under the acts of 1890, 1894, 1897, and 1909 are identical with that which is now in effect and which it is claimed should admit them free of duty. All the circumstances considered, and in the face of such a long-continued policy, we are of opinion that if Congress had intended to remove one of the salts of cinchona bark from the free list, it would have done so in some more definite and specific way than by subjecting it to duty as salts of glycerophosphoric acid. Congress, in the light of the decisions, must have known just what was covered by the designation salts of cinchona bark. It may not have known that the designation salts of glycerophosphoric acid likewise included one of the salts of cinchona bark, and we are inclined to believe that the language, judicially construed and legislatively approved, can more safely be considered as representing its true intention than a designation the full scope of which would be better understood and appreciated by the chemist. This view seems all the more reasonable when it is considered that Congress could hardly have intended that the same merchandise should be subjected to duty by one provision and admitted free under another. Indeed, that Congress did not have any intention of imposing duty on any of the salts of cinchona bark seems to be borne out by the fact that the House provision provided in paragraph 19 for salts and compounds of glycerophosphoric acid and in the proposed free list for "quinine, and its combinations with acids and compounds, not subject to duty in this section," thereby excluding from the proposed law "salts of cinchona bark," which had been free listed in the four previous tariff acts. If that modification had passed the Senate, it might have been well said that there was a legislative intention to subject to duty the salt of cinchona bark which was at the same time a salt or compound of glycerophosphoric acid. The Senate, however, declined to agree to the modification, and the free-list provision as it stood in the acts of 1890, 1894, 1897, and 1909 was restored and ultimately passed both Houses, a very clear indication, to our minds, that there was no intention to subject to duty any of the salts of cinchona bark.

Moreover, as the free-list provision provides for *all* salts of cinchona bark, we think that in the light of the history of the legislation

it should be regarded as the equivalent of an enumeration of every salt of cinchona bark, and as such an enumeration would include glycerophosphate of quinine, we must hold that the free-list provision is more specific than the general provision for salts of glycerophosphoric acid.

The decision of the Board of General Appraisers is *affirmed.*