EDGAR ALLEN STEEL CO. (INC.) ET AL. *v.* UNITED STATES (NO. 2969 [1])

United States Court of Customs Appeals, April 9, 1928

*Allan R. Brown* for appellants.

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty,* special attorney, of counsel), for the United States.

[1] T. D. 42715.

[Oral argument October 12, 1927, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD
Associate Judges

SMITH, Judge, delivered the opinion of the court:

Steel bars containing over six-tenths of 1 per centum tungsten were assessed with the appropriate rate of duty prescribed by paragraph 304 of the Tariff Act of 1922 and also with an additional duty of 72 cents per pound under paragraph 305 of said act, which reads, in part, as follows:

305. In addition to the rates of duty provided for in this schedule on steel in all forms and shapes, by whatever process made, and by whatever name designated, whether cast, hot or cold rolled, forged, stamped, or drawn, containing more than six-tenths of 1 per centum of nickel, * * * tungsten, molybdenum, or any other metallic element used in alloying steel, there shall be levied, collected, and paid 8 per centum ad valorem: * * * *Provided,* * * * That an additional cumulative duty of 65 cents per pound on the molybdenum content in excess of six-tenths of 1 per centum, and 72 cents per pound on the tungsten content in excess of six-tenths of 1 per centum shall be levied, collected, and paid on any material provided for in paragraph 304 containing molybdenum *and* tungsten. (Italics not quoted.) (The proviso recited is the second proviso to the paragraph.)

The importer protested that the steel bars contained tungsten only, not molybdenum *and* tungsten, and that therefore the merchandise was not subject to the additional rate of duty. The United States Customs Court overruled the protest and the importer appealed.

Does the second proviso of paragraph 305 apply to any of the materials provided for in paragraph 304 which do not contain both molybdenum and tungsten, is the sole question presented by this appeal.

The Government contends that the proviso above quoted which makes the additional duty applicable to "any material provided for in paragraph 304 containing molybdenum *and* tungsten" should be construed as if it read: "any material provided for in paragraph 304 containing molybdenum *or* tungsten." In support of that contention, the Government cited the opinion of General Appraiser Fischer in the matter of the protest of *Robert K. Greaves & Co.,* T. D. 40005. That opinion states that molybdenum and tungsten were *separately discussed and investigated* by the Ways and Means Committee of the House and the Finance Committee of the Senate, whereas many of the other well-known steel alloys were *treated more or less collectively.* The general appraiser also points out that the hearings before both committees disclose that steels of which molybdenum is an alloy have uses and purposes separate and distinct from steels which contain tungsten; that molybdenum steel is used for structural parts of machines such as automobiles, airplanes, trucks, tractors, and other things requiring a maximum of strength and

toughness, whereas tungsten steel is employed in the manufacture of tools and high-speed tools, the tungsten content of which ranges from 2 to 18 per centum.

From those facts and the fact that tungsten and molybdenum are separately provided for in paragraph 302, the opinion deduces the conclusion that the words "containing molybdenum and tungsten," *if not mere surplusage*, must be regarded as *having been added out of an abundance of precaution*, inasmuch as to hold otherwise would do violence to the very purpose and intent of the whole proviso and defeat the consistently expressed will of the lawmakers.

We find ourselves unable to sustain the contention of the Government or to agree with the conclusion reached in the Greaves case. The contention of the Government and the reasoning of the learned judge who wrote the opinion in the Greaves case can be sustained, if at all, only on the assumption that there are no steels produced containing both tungsten and molybdenum and that when molybdenum is used in the manufacture of steel, tungsten is not used. That assumption, however, is not supported by the record. Engelstadt, a witness for the importer, testified that he was engaged in the steel and iron business and that he handled steel containing tungsten, steel containing molybdenum, and steel containing both tungsten and molybdenum. Indeed, the importer offered to prove that molybdenum was introduced into steel for the purpose of increasing its toughness, that tungsten was added for the purpose of giving to steel higher heat-resisting qualities, that tungsten was not a substitute for molybdenum, and that molybdenum was not a substitute for tungsten. The importer, although he was not allowed to make good his offer, nevertheless proved by the unimpeached and uncontradicted testimony which *was* admitted in evidence that there is a steel containing tungsten only, a steel containing molybdenum only, and a steel containing both tungsten and molybdenum. That testimony establishes that there is a steel to which the proviso, just as it was enacted, is applicable.

The first part of paragraph 305 imposes an additional duty of 8 per centum ad valorem on steel which contains six-tenths of 1 per centum of tungsten and 8 per centum ad valorem on steel which contains more than six-tenths of 1 per centum of molybdenum. The second proviso to that paragraph subjects the steel materials enumerated in paragraph 304 which contain molybdenum *and* tungsten to a cumulative duty of 65 cents per pound on the molybdenum content in excess of six-tenths of 1 per centum, and 72 cents per pound on the tungsten content in excess of six-tenths of 1 per centum. That cumulative duty was imposed on a steel which possessed not only the desirable characteristics produced by the addition of molybdenum but also the heat-resisting and self-hardening

in air qualities conferred by the addition of tungsten. See "Tungsten," New Standard Dictionary. As steel of that kind was certainly a more costly and probably a much higher grade of steel than a steel containing only one of the alloying metallic elements, it was assessed with a higher rate of duty than the less processed and simpler product.

There is absolutely nothing in the proviso or in the tariff or other laws from which it could be fairly or properly deduced that the words "containing molybdenum and tungsten" were thrown into the statute as a precaution or as mere surplusage. Neither is there any sound reason for believing that Congress intended to use the word "or" instead of the word "and," in said phrase. In fact, if Congress had actually used the word "or" it would, in terms at least, have excluded from the operation of the second proviso a distinct, particular class of commercial steel which by the use of the word "and" was expressly subjected to the high, additional cumulative duty therein prescribed.

The language in the second proviso of paragraph 305 is not ambiguous and will result in no absurdity or conflict with any other part of the statute, if given the definite meaning which its words clearly import. The courts are, therefore, bound to determine the intention of Congress by the language which was actually used and have no right to give any meaning to such language other than that conveyed by the words, terms, or expressions in which the legislative will was expressed. *United States* v. *Marx*, 1 Ct. Cust. Appls. 152, 155; *Paulina* v. *United States*, 7 Cranch 52, 60; *Lewis* v. *United States*, 92 U. S. 618, 621; *Thornley* v. *United States*, 113 U. S. 310, 313; *Lake County* v. *Rollins*, 130 U. S. 662, 670–671; *United States* v. *Goldenberg*, 168 U. S. 95, 102–103.

Where the language is plain and unmistakable, there is nothing to construe and to determine the purpose of the legislation in any other way than by giving to a plain statute its plain meaning would be nothing less than judicial legislation. *Maxwell et al.* v. *Moore et al.*, 22 Howard 185, 191.

The provision for additional cumulative duty of $1.25 per pound as reported by the Ways and Means Committee of the House reads as follows:

*Provided further*, That an additional cumulative duty of $1.25 per pound on the molybdenum content in excess of 1 per centum, and 72 cents per pound on the tungsten content in excess of 1 per centum shall be levied and paid on *any of the above-named articles*. (Beginning with "any," italics not quoted.)

In Committee of the Whole, Mr. Tilson, a member of the Ways and Means Committee, moved to strike out the words "of the above-named articles" and to insert in lieu thereof the following: "articles containing molybdenum and tungsten." The amendment was

adopted and the proviso as it finally passed the House reads as follows:

> *Provided further*, That an additional cumulative duty of $1.25 per pound on the molybdenum content in excess of 1½ per centum, and 72 cents per pound on the tungsten content in excess of 1½ per centum shall be levied, collected and paid. on *any articles containing molybdenum and tungsten.* (Beginning with, "any," italics not quoted.)

The proviso as passed by the Senate and adopted in conference is now the second proviso of paragraph 305 of the tariff act now in force and reads as follows:

> *Provided further*, That an additional cumulative duty of 65 cents per pound on the molybdenum content in excess of six-tenths of 1 per centum, and 72 cents per pound on the tungsten content in excess of six-tenths of 1 per centum shall be levied, collected, and paid on *any material provided for in paragraph 304 containing molybdenum and tungsten.* (Beginning with "any," italics not quoted.)

Even if it were conceded that the language used was ambiguous. or uncertain and, therefore, open to interpretation, there is nothing in that history of the legislation which would justify the conclusion that Congress did not mean exactly what it said, that the cumulative duty was to be imposed on material containing molybdenum *and* tungsten. Indeed, any conclusion to be drawn from the history of the legislation militates against the position taken by the Government inasmuch as the bill as first reported by the Ways and Means Committee of the House accomplished the result for which the Government now contends and was not adopted either by the House or by the Senate.

In *United States* v. *Gavin & Co.*, 7 Ct. Cust. Appls. 292, cited by the Government, silk netting, ornamented with beads *and* spangles, was classified under paragraph 358 of the tariff act of 1913 as "trimmings * * * of whatever yarns, threads, or filaments composed." The importer claimed that the goods were articles composed wholly or in chief value of beads *or* spangles, dutiable under paragraph 333 of said act. This court held that paragraph 333 was not limited to articles which were ornamented with either beads or spangles and was applicable to articles ornamented with both beads and spangles. The court said "that trade and commerce had long and. uniformly regarded articles trimmed with beads and spangles as *beaded* articles and that the words 'bead, beaded, or jet trimmings, or ornaments' as used in that tariff act embraced trimmings ornamented with both beads *and* spangles." (The italicized word "beaded" not quoted.) The court definitely found that "in trade and commerce and in tariff legislation the words beads and spangles were treated as and used interchangeably and collectively." The decision in the Gavin case was based not only on legislation previously passed but on the judicial interpretation of the designation. "manufactures known commercially as bead, beaded, or jet trim-

mings, or ornaments" which was held to include spangles. See T. D. 23232 and *Morrison* v. *United States*, 107 Fed. Rep. 113.

*United States* v. *Bertrose & Co.*, 11 Ct. Cust. Appls. 275, upon which appellee relies, is not in point. In that case pen and ink drawings were assessed for duty under paragraph 376 as pen and ink drawings, not specially provided for. The importer claimed that the drawings were entitled to free entry under paragraph 652 as "original drawings and sketches in pen and ink or pencil and water colors." The board sustained the protest and held that the provision in the free list for "original drawings and sketches in pen and ink or pencil and water colors" was more specific than the dutiable provision. This court, on appeal, affirmed the board and ·held that the conjunction "and" should be interpreted as if it had been written "or," citing the case of *American Colortype Co.* v. *United States*, 9 Ct. Cust. Appls. 212, 213, in which it was held that the free-list paragraph applied to pictures drawn or sketched in pen and ink or pencil, even though they were colored with water colors. If paragraph 652 had read "original drawings and sketches in pen and ink, *containing* pencil and water colors," a different issue would have been presented and one more nearly resembling the case under discussion. No such wording was used, however, and the court very properly decided that paragraph 652 was more specific than paragraph 376 and was intended to cover drawings and sketches in pencil or in water colors. Clearly there was no tariff reason for exempting from duty original works of art which were first sketched in pencil and then water colored and subjecting to duty like original water color sketches which were made without the aid of a pencil.

The judgment of the United States Customs Court is *reversed*.

### DISSENTING OPINION

GRAHAM, Presiding Judge: I find myself in disagreement with the majority opinion in this case, and, although the office of a dissenting opinion is one of doubtful utility, I am, nevertheless, disposed to state, as briefly as I may, my reasons for such disagreement.

Mr. Justice Fischer, in the court below, based his decision on the former holding of the Board of General Appraisers in *Greaves & Co.* v. *United States*, T. D. 40005, 45 Treas. Dec. 134. The opinion, with which I find myself in complete harmony, is, in part, as follows:

As all the facts regarding the precise character of the steel involved herein are either mutually conceded or proved by uncontradicted evidence, there is presented for this board's determination this single question of law: Does the second proviso to paragraph 305 impose the additional cumulative duties therein mentioned only on "material provided for in paragraph 304 containing molybdenum and tungsten" each in excess of six-tenths of 1 per centum; or does it likewise impose such duties if only one or the other of the mentioned alloys is present in said material in excess of the prescribed percentage?

In order to give any effect to the obvious intent of the proviso we believe it must be held to apply to either or both of said alloys if present in excess of six-tenths of 1 per centum; that is, if only tungsten is present in such excess, as in the merchandise at bar, the additional cumulative duty imposed thereon is 72 cents per pound; if only molybdenum is so present such duty is 65 cents per pound; if both alloys are present, each in such excess, each must pay its respective duty, to wit, 65 cents per pound on the molybdenum and 72 cents per pound on the tungsten. The proviso deals only with these two alloys and imposes a different additional cumulative duty on each if contained in excess of six-tenths of 1 per centum in material provided for in paragraph 304. It is applicable to the alloys contained in the material covered by the latter paragraph rather than to the material containing the alloys. Any other construction would defeat the plain purpose of the proviso.

Such conclusion would seem to be confirmed by reading the record of the hearings and proceedings held before the Ways and Means Committee of the House and the Senate Finance Committee, pending the enactment into law of the tariff bill. It appears therein that, while many of the other well-known steel alloys were treated more or less collectively, molybdenum and tungsten were separately discussed and investigated, a chapter being devoted to each alloy in which its qualities and properties are thoroughly considered and detailed at length. See General Tariff Revision Hearings, Committee on Ways and Means, Part II, 1920–21, pp. 742 to 748 and pp. 748 to 753.

It likewise appears from said hearings that the steels in which molybdenum enters as an alloy have uses and purposes separate and distinct from those for which tungsten steel is employed. In the chapter entitled "Molybdenum" we find the following (p. 743):

The class of steels for which molybdenum is especially adapted embraces alloy steels for structural parts of machines, such as automobiles, aeroplanes, trucks, tractors, etc., or for any part where the maximum of strength and toughness in steel is necessary. The molybdenum content in steels of this type is generally about four-tenths of 1 per centum, or 8 pounds to the ton.

On the other hand, tungsten steel is shown to be very largely employed in the manufacture of tools, high-speed steel tools, the tungsten content ranging from 2 to 18 per centum, as in the steel bars here under consideration. This total difference in the uses of the two alloys is significant in ascertaining the will of Congress in fixing the tariff status of each.

It is likewise of consequence to observe that throughout the exhaustive hearings on each of these alloys we can not find the slightest support for the theory that the lawmakers had under sole consideration steel which contained both alloys each in excess of six-tenths of 1 per centum, or that the proviso in question ever contemplated such material.

On the contrary, any such contention would appear to be completely negatived by the provisions of paragraph 302 wherein those alloys, in their various forms in ores or concentrates, etc., are separately provided for at different rates of duty. Said paragraph, among other things, provides for—

molybdenum ore or concentrates, 35 cents per pound on the metallic molybdenum contained therein; tungsten ore or concentrates, 45 cents per pound on the metallic tungsten contained therein; * * * ferromolybdenum, metallic molybdenum, molybdenum powder, calcium molybdate, and all other compounds and alloys of molybdenum, 50 cents per pound on the molybdenum contained therein and 15 per centum ad valorem; ferrotungsten, metallic tungsten, tungsten powder, tungstic acid, and all other compounds of tungsten, 60 cents per pound on the tungsten contained therein and 25 per centum ad valorem; ferrochromium tungsten, chromium tungsten, chromium cobalt tungsten, tungsten nickel, and all other alloys of tungsten not specially provided for, 60 cents per pound on the tungsten contained therein and 25 per centum ad valorem * * *.

These provisions, like those in the proviso to paragraph 305, mainfest clearly the congressional purpose to deal separately with molybdenum and tungsten, and to impose a relatively higher duty on the latter. In each instance the single subject of legislation is either molybdenum or tungsten, and that tariff status is consistently followed wherever either or both alloys are mentioned. There is, therefore, no question but that Congress plainly intended that each be treated as a separate and distinct dutiable entity from its appearance in ore right through to its presence in finished material ready for manufacture into articles.

The last four words of the proviso to paragraph 305, to wit, "containing molybdenum and tungsten," must therefore be regarded, if not as mere surplusage, then as having been added simply out of an abundance of caution, since to attempt to construe them literally as written would certainly do violence to the very purpose and intent of the whole proviso and defeat the consistently expressed will of the lawmakers.

Our conclusion herein is further strengthened by the reasoning applied by the court in the analogous case of *United States* v. *Gavin*, 7 Ct. Cust. Appls. 292, T. D. 36804. There, the sole question, as stated by the court, was, "Do the words 'composed wholly or in chief value of beads *or* spangles' require the articles to be wholly or in chief value of one or the other—beads or spangles, singly—or is the statute applicable where the beads and spangles together are required to and do constitute the chief value of the articles?"

After pointing out that "beads or spangles" were provided for at the *same rate* of duty, the court reasoned that "this conceded uniformity of accorded rates upon each, beads and spangles, in whatever condition found, argues a purpose of Congress to treat them alike or as one subject for dutiable purposes," and held that the statutory language should be interpreted as though written "composed wholly or in chief value of beads or spangles or beads and spangles." In so holding the court said:

In the presence of this expressed purpose of Congress, and in the view that both conjunctions "and" and "or" read in any other sense would not only defeat the purpose of Congress manifested by the words of the paragraph but lead to an absurd result, the court is of the opinion that the phrase "beads or spangles," as used in paragraph 333, was so used as a collective subject of legislation, embracing all articles composed of either or both of its elements.

If the reasoning of the court was sound as to the facts and the law involved in that case, then the converse of that reasoning is equally true with regard to the facts and the law in the present case. If the imposition of *uniform* rates of duty made the phrase "beads or spangles" a "collective subject of legislation," then conversely the imposition of *different* rates of duty is indicative of an intent that the phrase "containing molybdenum and tungsten" be construed as separately providing for each of those alloys. At any rate we are firmly convinced that any other interpretation would defeat the whole intent and purpose of the proviso.

We therefore hold that the second proviso to paragraph 305 covers two separate and distinct dutiable entities, to wit, molybdenum and tungsten, if contained in material provided for in paragraph 304 in excess of six-tenths of 1 per centum; that it imposes on each of said alloys so present in said material in such excess a different specific additional cumulative duty; that such duty attaches to its respective alloy regardless of the presence or absence of the other alloy; and that if both alloys are present, each in excess of the prescribed percentage, each shall pay its appropriate additional cumulative duty.

In support of what was said in the opinion just quoted from, the following observations are relevant.

A further consideration of the legislative history of paragraph 305 gives conclusive evidence that the Congress was intending no such result as is arrived at in the majority opinion. When H. R. 7456, which afterwards became the Tariff Act of 1922, was introduced in the House of Representatives and reported out of the Ways and Means Committee thereof, paragraph 305 read as follows:

PAR. 305. In addition to the rates of duty provided for in this title on steel in all forms and shapes, by whatever process made, and by whatever name designated, whether cast, hot or cold rolled, forged, stamped, or drawn, containing more than six-tenths of 1 per centum of nickel, cobalt, vanadium, chromium, tungsten, molybdenum, or any other metallic element used in alloying steel, there shall be levied and collected 15 per centum ad valorem: *Provided,* That manganese and silicon shall not be considered as alloying material unless present in the steel in excess of 1 per centum: *Provided further,* That an additional cumulative duty of $1.25 per pound on the molybdenum content in excess of 1 per centum, and 72 cents per pound on the tungsten content in excess of 1 per centum shall be levied and paid on any of the above-named articles.

Thereafter, while the bill was being read by the Committee of the Whole for amendment, Mr. Tilson, a member of the Ways and Means Committee and authorized to speak for that committee, offered the following committee amendment:

Amendment by Mr. Tilson: Page 53, line 7, strike out the phrase "of the above-named articles" and insert in lieu thereof the following: "Articles containing molybdenum and tungsten."

In support of this amendment, Mr. Tilson said:

Mr. Chairman, this is purely a clarifying amendment, believed by the Tariff Board to make the paragraph clearer. I agree with their recommendation, and I ask for a vote.

Cong. Rec., 67th Cong., 1st sess., p. 4076.

Thereupon the amendment was adopted and thereafter became a part of the bill as it passed the House. This language was further amended in the Senate Finance Committee by striking out the word "article" and substituting therefor the words "material provided for in paragraph 304."

It will be observed that as the bill was introduced there can be no doubt of the intent of Congress to impose an additional cumulative duty on all the articles named in that paragraph, namely, forms and shapes of steel, which contained *either* tungsten or molybdenum in excess of one per centum. It is equally certain that the Congress did not intend to change this basic idea in amending the bill as it did by the Tilson and Senate amendments, but was only desiring to make its meaning more clear. If we, by a strict grammatical construction of the conjunction "and," hold that the additional cumulative duties apply only when the imported steel contains *both* tungsten and molybdenum, we are judicially construing this statute in a way which was, in my judgment, never intended by its framers.

This statute should not be so construed as to lead to unreasonable and absurd results. *United States* v. *Merck & Co.*, 8 Ct. Cust. Appls. 137, T. D. 37269; *Blass Co.* v. *United States*, 12 Ct. Cust. Appls. 481, T. D. 40692. By holding the additional cumulative duties to apply only where both tungsten and molybdenum are present, this anomalous situation results: The importer brings in steel containing tungsten only and steel containing molybdenum only, on the same ship and evades the additional cumulative duty; these are sold to the smelter or maunfacturer, thrown together in the melting pot and a product results which would have been liable to a heavy additional rate of duty, if so imported. If there is, as a reason for these duty rates on tungsten and molybdenum, a desire to encourage and promote domestic production, such idea is entirely lost sight of by such a construction. That there is such a reason for this legislation, I can not doubt, and this reason I have endeavored to set forth in my dissenting opinion in *Watson, Geach & Co.* v. *York Metals Co.*, 14 Ct. Cust. Appls. 449, 471–473, T. D. 42112.

There was but one witness who testified in the case at bar. If he had testified, as indicated by the offers to prove, he would have stated that there was a steel that contained tungsten only, a steel that contained molybdenum only, and a steel that contained both; that molybdenum was added to steel for the purpose of increasing its toughness, and tungsten for the purpose of increasing its heat-resisting powers, and that these elements are not substitutes for each other. What is there here to justify such a radical distinction as the majority opinion holds to exist between the duties to be imposed on the one hand on the molybdenum or tungsten content of steel, when found separately, and upon the same content, when found together? There is here no showing that such steel is worth more, or sells at a better price, or is better for manufacturing or other processes. For anything that may appear, such a mixture of elements in the same steel, may be a detriment and not an advantage. General Appraiser Fischer, in the Greaves case, quoted supra, referred to the hearings before the Ways and Means Committee when H. R. 7456 was being considered. In addition to the matters referred to by him it appeared in said hearings that "the steel in which molybdenum is used is not tool steel," and that molybdenum was used to toughen steel and to make it work and machine more easily, for such uses as parts of automobiles, etc. Tariff hearings, H. of R., Tariff Act of 1922, Part II, pp. 742–747. As generally known, and as shown by the offers of proof herein, the well-known use of tungsten in steel is to harden and give to the steel heat-resisting qualities, and it requires no inventive mind to discover that the respective properties of molybdenum and tungsten might not be harmoniously combined in steel manufacturing. Reference is had to "The Summary of Tariff Infor-

mation, 1921, relative to H. R. 7456," pages 367, 368, where it is said: "Molybdenum, either alone or in conjunction with tungsten, has been recommended for giving high-speed cutting qualities to steel, but many manufacturers have found it unsatisfactory for that purpose."

It is urged that the language in the second proviso—

*Provided further,* That an additional cumulative duty of 65 cents per pound on the molybdenum content in excess of six-tenths of 1 per centum, and 72 cents per pound on the tungsten content in excess of six-tenths of 1 per centum shall be levied, collected, and paid on any material provided for in paragraph 304 containing molybdenum and tungsten.

is only intended to apply to the alloying metal content in a special class of steel containing both tungsten and molybdenum. If this be true, then it applies to a class of steel not theretofore mentioned either in paragraph 304 or 305, or elsewhere in the Tariff Act of 1922. But the language is: "An *additional cumulative* duty." If the construction of the majority is correct, this duty is "*additional*" and "*cumulative*" to what? There having been no original provision for steel containing both tungsten and molybdenum, it could not be *additional* and *cumulative* to anything. It follows that it could not have been the congressional intent to so limit the effect of this language. A more sensible and reasonable construction would be to say that Congress having indicated, in the first duty provision of paragraph 305, certain alloying metals, to-wit: nickel, cobalt, vanadium, chromium, tungsten, molybdenum, and any other metallic element used in alloying steel, as subject to additional duties when found in steel, intended by the last proviso of the paragraph to select from this list of alloying metals, two only, namely, tungsten *and* molybdenum, and to impose upon them a second additional duty, and this only when they were found in such steel as was mentioned in paragraph 304.

For the reasons suggested, I think the judgment below should be *affirmed.*

### DISSENTING OPINION

BLAND, Judge: I agree with all that has been said in this case by Presiding Judge Graham in his dissenting opinion, which was our position, substantially, in the case of *Watson, Geach & Co. (Inc.)* v. *York Metal & Alloys Co.,* 14 Ct. Cust. Appls. 449, T. D. 42112. And, in addition, I wish to emphasize, as strongly as possible, that in a case of this character, where the court is confronted with a construction of a tariff provision which will lead to such a result as to be not within the reasonable intent of Congress, it is its most imperative duty to refuse to apply the words in their narrow and strict sense, but to give them such meaning as comports to the obvious intent of the legislature. It should be remembered that the intent of the law

is the law, and that all rules of construction are aids of the courts in trying to ascertain the intent. Unless absolutely unavoidable, the courts will refuse to give a meaning to a legislative act which attributes to the lawmakers the doing of an absurd thing. This court and other courts have frequently said that, while unambiguous words call for no construction, nevertheless if unambiguous words are used in such a manner as to produce ambiguity, then it is the duty of the court to look to the purpose of the act and to attempt to construe the law in accordance with the intent of its framers. Lewis's Sunderland, Stat. Constr., sec. 633; *In re Cahn, Belt & Co.*, 27 App. D. C. 173; *Fields* v. *United States*, 27 App. D. C. 433; *United States* v. *Day*, 27 App. D. C. 458; *Moss* v. *United States*, 29 App. D. C. 188; *Garrison* v. *District of Columbia*, 30 App. D. C. 515; *District of Columbia* v. *Dewalt*, 31 App. D. C. 326.

Section 633 of Lewis's Sunderland, Stat. Constr. is quoted in *In re Cahn, Belt & Co., supra*, as follows:

> The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent. "The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of a statute when it leads away from the true intent and purpose of the legislature and to conclusions inconsistent with the general purpose of the act."

This would seem to be the generally accepted rule which the courts ordinarily follow in a case like the one at bar. That Congress must have intended to levy the additional cumulative duty upon molybdenum or tungsten, if either were found in certain forms and shapes of steel in the prescribed quantity, is shown, not only by the context of the paragraph, but by the whole steel schedule, as well as the entire history of steel legislation. This intent should be declared to be the law. *United States* v. *Stone & Bowner Co. et al.*, 274 U. S. 225.

I, therefore, *dissent* from the opinion of the court.