(C. D. 1106)

GRIFFON IMPORTING CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 14, 1948)

*Brooks & Brooks (Frederick W. Brooks, Jr.,* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*John J. McDermott* and *Richard E. FitzGibbon,* special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., dissenting

OLIVER, Presiding Judge: The merchandise before us consisting of certain glass bottles exported from England was assessed for duty at 75 per centum ad valorem under paragraph 218 (e) of the Tariff Act of 1930. They are claimed to be dutiable at 25 per centum ad valorem under the same paragraph. Paragraph 218 (e) reads:

Bottles and jars, wholly or in chief value of glass, * * *; all the foregoing produced by automatic machine, 25 per centum ad valorem; otherwise produced, 75 per centum ad valorem.

The only issue presented is whether these bottles were "produced by automatic machine" or "otherwise produced." This same question was before us in *Jos. Riedel Glass Works, Inc.* v. *United States,* 12 Cust. Ct. 173, C. D. 849. The machine which produced the bottles in that case was fully automatic in its operation after the molten glass entered the mold. The supply of molten glass, however, was gathered and the required amount for the bottle to be manufactured was cut off by a worker. This operator was not a glass blower and no human glass-blowing operation was involved. In that case, upon the record there made and after an examination of the legislative history of paragraph 218 (e), we found that such a machine, automatic except for the matter of the method of feeding the raw material to it, was such an automatic machine as was contemplated by the Congress in enacting paragraph 218 (e) into law. Upon appeal, this decision was

affirmed by our appellate court in *United States* v. *Jos. Riedel Glass Works, Inc.*, 32 C. C. P. A. 201, C. A. D. 307.

The record in the present case presents a state of facts somewhat different from those before us in the *Riedel* case, *supra*. The present record consists of the testimony of one witness for the plaintiff, taken by deposition in England, and the oral testimony of two witnesses for the Government whose testimony was taken in open court in New York. The parties to this litigation are in substantial agreement as to the operation of the bottle-making machine that produced all the bottles before us. This operation is set forth in detail in the answer of plaintiff's witness to interrogatories No. 4 and 5, and cross-interrogatory No. 26 in exhibit 1. These questions and answers have been placed in their proper chronological order for ease of reference and have been, as so combined, set forth in plaintiff's exhibit 13. Plaintiff's witness testified as follows (exhibit 13, pp. 1, 2):

(a) How does the glass get into the mould or machine?

(b) What takes place immediately following the introduction of the glass?

(c) How the quantity of glass is fixed or determined?

(d) How the quantity of air to blow each bottle or jar is fixed or determined and what is its source of supply?

(e) What further operations are necessary to complete the production of the bottles or jars?

a. Molten glass is transferred, by a gatherer using a solid gathering iron, from the furnace to the parison mould to which are fitted the neckring moulds.

b. No. 1 Operator cuts off sufficient glass which, by means of vacuum created by continuously working pumps to which the machine is connected, is automatically sucked into the neck moulds. This operation forms the aperture, the brim and the external shape of the neck of the bottle.

c. The quantity of glass is largely determined by the size or capacity of the parison mould and also partly by the point at which the operator cuts the glass from the gathering iron.

d. Compressed air, supplied from power driven compressors, is released through a control valve to blow the internal shape of the neck and the parison form. The parison form is determined by the shape of the parison mould.

e. The neckring moulds in their spring loaded holders, supporting the partly formed bottle, are transferred (by No. 1 Operator) to the blow or finishing mould. No. 2 Operator lowers the blow head thereby releasing the valve which controls the compressed air supply. The bottle is then automatically blown to the shape of the finishing mould. The finished bottle is removed from the mould by No. 2 Operator who compresses the spring of the neck mould holders, automatically ejecting the bottle on to the table of the machine. From this point the bottle is carried to the annealing lehr.

5. Was human lung power used at any time in the production of the item numbers in question 3?—No.

It appears from the above testimony of the plaintiff's witness in the present record that the imported bottles were produced by machine; that in addition to the gatherer (the only operator in the *Riedel* case, *supra*), the services of two other operators were required, three in all; that the air required to blow the molten glass to the form of the bot-

tles in the molds was compressed air supplied by the machine; and that no human glass-blowing operation was involved at any point.

The question thus presented for our consideration is whether such a machine, so operated, is to be considered for tariff purposes, in the bottle industry, as an automatic machine. In the *Riedel* case, *supra*, we held that a machine completely automatic as far as forming the bottle was concerned, but in which the raw material, molten glass, was fed to the machine by an operator, was an automatic machine within the meaning and intent of Congress. In our decision in the *Riedel* case, *supra*, after carefully examining the legislative history of paragraph 218 (e), which appeared for the first time in the Tariff Act of 1930, we said: "It is thus made clear that the Congress did not intend the lower rate to apply to hand-blown bottles, but only to bottles made by automatic machines" and later "It thus appears that the term 'automatic machine' has been somewhat loosely used and in some instances, at least, as synonymous with 'machine-made,' as opposed to hand-blown bottles." Our court of appeals in its opinion affirming this court, *supra*, cited with approval the following definition in Webster's New International Dictionary, Second Edition, 1936:

*automatic machine.* A machine or machine tool which, after once being set, operates automatically, *except for applying the power, lubrication, supplying material, and shutting off the power.* [Italics quoted.]

The court said further:

As argued by appellee, it is clear from the record that the machine which produced the bottles in this case operated automatically, after once being set, except for supplying the raw material—molten glass. Such a machine falls squarely within the dictionary definition of "automatic machine" given above, despite the fact that the raw material is fed by hand. *Once the raw material is placed into the machine, all other operations are automatic, and the next thing that emerges is a completed bottle.* [Italics supplied.]

In the case now before us the machine does *not* "after once being set" operate "automatically except for * * * supplying material." In fact, were it not for the intervention of operators No. 2 and 3 in the process, no completed bottle would ever emerge from the machine. Defendant's witness, Garwood, a superintendent in a glass bottle-manufacturing plant with over 50 years' experience in the industry, described a machine such as the one which produced these bottles, as a "hand-operated machine" and stated it has been so designated for over 20 years (R. 29). He further testified, in substance, that the only automatic machine is one where the raw material is automatically fed to the machine. He also stated that his understanding of an automatic machine is one which performs all the steps in the manufacture of a bottle without the use of any skilled labor or operator (R. 22). The Government's second witness did not testify respecting the method of production of the

involved bottles, but it was agreed that his testimony in this respect would be the same as that of the witness Garwood.

Because of the different. facts appearing in the present record, we are of opinion that our decision, as affirmed by our appellate court in the *Riedel* case, *supra*, is not controlling in the present case.

We are here called upon to determine first, whether or not the machine described in this record is an automatic machine as that term is used in paragraph 218 (e); and second, if it is not, whether it was the intent of Congress to impose the higher rate of duty provided in said paragraph (75 per centum) only to hand-blown bottles and to impose the lower rate of duty (25 per centum) on all machine-made bottles. There is a presumption that the classification of the collector is correct. In this case this means that it is presumed that the machine which produced the imported bottles was *not* an automatic machine. By protesting the collector's classification, the plaintiff has assumed not only the burden of establishing that the classification is erroneous but in addition that its own claim is correct. There is no testimony in the present record to establish as a fact that the machine which produced these bottles was automatic. Its operation is described and from plaintiff's own witness it is made clear that to produce a bottle on this machine the services of a gatherer and two additional operators are required. The testimony of defendant's witnesses that such a machine is not automatic, but is a hand-operated machine, was not rebutted.

We are satisfied that the machine which produced the imported bottles was not an automatic machine within the common meaning of that term. The Congress did not use language separating these bottles into "hand-blown" at one rate and "machine-made" at the lower rate, nor did it choose to select the "hand-blown" type for greater protection and relegate those "otherwise produced" to the lower rate. The Congress, presumably for good and sufficient reasons, chose the language now found in paragraph 218 (e) "produced by automatic machine." It is not within our province to make the laws. We may not substitute our opinion for the written statute. We must apply the language which was actually used by the Congress and have no right to give any meaning to such language other than that conveyed by the words, terms, or expressions in which the legislative will was expressed. (*Edgar Allen Steel Co. (Inc.) et al.* v. *United States*, 16 Ct. Cust. Appls. 26, page 29, T. D. 42715.) We are of the opinion that as the statute is now worded we must find the bottles before us not to have been produced on an *automatic* machine. We have already held to be *automatic* a machine which did not have the molten glass automatically fed to the machine, but which thereafter operated automatically. We may not substitute for the words of the statute "produced by automatic machine," the words "pro-

duced by machine." To do so would be to invade the legislative functions of the Congress. In so holding, we are mindful of the language of our appellate court in concluding its opinion in the *Riedel* case, *supra*. It said:

> * * * Suffice to say, that aside from the question of revenue, the intent of Congress as demonstrated by the legislative history of the statute was to protect American glass blowers against the competition of lower-paid glass blowers of other nations by providing a duty of 75 per centum ad valorem for all bottles produced otherwise than by automatic machine.

We do not understand that our appellate court by use of the above-quoted language intended to indicate that only hand-blown bottles were to be subject to the higher rate of duty. We are of opinion that as the provisions of paragraph 218 (e) now stand, the only imported glass bottles subject to the lower duty (25 per centum) are those which are "produced by *automatic* machine." [Italics ours.] As we find the machines in question not to be "automatic" in the common meaning of that term, and as no different or commercial meaning is claimed or proven, the claim of the plaintiff is denied, the protests are overruled, and the decision of the collector is affirmed.

DISSENTING OPINION

COLE, Judge: I cannot agree with the court as it distinguishes the present case from *Jos. Riedel Glass Works, Inc.* v. *United States*, 12 Cust. Ct. 173, C. D. 849, which involved precisely the same issue as that presented herein.

In the cited case, the court expressed its finding this way: "The machine unit which actually 'produced' the bottles now before us (the bottle-forming machine) was admittedly automatic in its entire operation." The same language is equally applicable here. The manual work referred to cannot be characterized as "productive." The gatherer merely supplied or fed the material, molten glass, into the machine, and the so-called operators applied power for the machine whose mechanical operations automatically produced the bottles under consideration.

Following the reasoning employed in the *Jos. Riedel Glass Works, Inc.* case, *supra*, affirmed in *United States* v. *Jos. Riedel Glass Works, Inc.*, 32 C. C. P. A. 201, C. A. D. 307, the claim of plaintiff should be sustained.