(C. D. 1727)

W. N. PROCTOR COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 30, 1955)

*Henry L. Ziegel* (*Hyman Mendel Kaufman* of counsel) for the plaintiff.
*Geo. Stephen Leonard*, Acting Assistant Attorney General (*Mollie Strum* and *Samuel D. Spector*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar, invoiced as "Raw Angora Rabbit Wool," was classified under paragraph 1102 (b) of the Tariff Act of 1930 as "hair of the Angora goat, * * * and other like animals," scoured, at the rate of 37 cents per pound of clean content.

Plaintiff claims the merchandise properly classifiable under said paragraph 1102 (b), *supra*, as hair, in the grease or washed, at the rate of 34 cents per pound of clean content, or, alternatively, under the same paragraph as "hair of the Angora goat, * * * and other like animals," sorted, not scoured, at the rate of 35 cents per pound of clean content.

Plaintiff, in its brief, concedes that the merchandise in question has been "sorted," but maintains that it has not been "scoured," and that, accordingly, the claimed rate of 35 cents per pound of clean content is properly applicable. The issue herein is thus limited to a determination as to whether the involved Angora rabbit wool has been scoured, within the statutory meaning of the term, so as to support the rate of duty imposed by the collector.

For purpose of clarification as to the meaning of the statutory terms pertinent herein, reference is made to paragraph 1101 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (formerly designated as paragraph 1101 (b) of said tariff act), reading as follows:

[PAR. 1101]   (c) For the purposes of this schedule:

(1)   Wools and hair in the grease shall be considered such as are in their natural condition as shorn from the animal, and not cleansed otherwise than by shaking, willowing, or burr-picking;

(2)   washed wools and hair shall be considered such as have been washed, with water only, on the animal's back or on the skin, and all wool and hair, not scoured, with a higher clean yield than 77 per centum shall be considered as washed;

(3)   scoured wools and hair shall be considered such as have been otherwise cleansed (not including shaking, willowing, burr-picking, or carbonizing);

(4)   sorted wools or hair, or matchings, shall be wools and hair (other than skirtings) wherein the identity of individual fleeces has been destroyed, except that skirted fleeces shall not be considered sorted wools or hair, or matchings, unless the backs have been removed; * * *.

No official samples of the imported merchandise are before the court, but there were introduced in evidence certain samples of Angora rabbit hair stated to be "fairly representative" of the involved shipments (plaintiff's exhibits 1, 2, 3, and 4, R. 7–14).

All of the testimony in the case was introduced on behalf of the plaintiff who called five witnesses. The first of these was employed by the importer of the rabbit wool in question. He stated that his duties consisted mainly in checking samples against goods imported by his firm to determine whether the merchandise so received conformed to that ordered. The witness testified that plaintiff's exhibit 1 was known as "No. 1 plucked" (R. 7), while plaintiff's exhibit 2 was called "No. 1 clipped" (R. 10). He designated plaintiff's exhibit 3 as clipped wool, but inferior to the wools contained in exhibits 1 and 2, and plaintiff's exhibit 4 as "matted wool," not capable of being pulled apart by hand, as could the wool in exhibits 1, 2, and 3, containing a certain amount of vegetable fibers, such as alfalfa, hay, or "anything which might be used to feed the rabbit" (R. 14–15).

Plaintiff's second witness, Hodgson, is the editor and publisher of a fur trade journal, having to do with fur farming, including the raising of Angora rabbits, and also the author of several publications devoted to the general subject of fur farming and the raising of Angoras. He is also president of Canadian Small Breeds, Ltd., an organization engaged in raising Angora rabbits, which firm was the shipper of the merchandise here involved.

The witness testified that, in the aforesaid capacity, he had frequently visited growers of Angora rabbits and producers of Angora rabbit wool, and, at such times, had observed the harvesting of the

wool. He further stated that he had bought Angora rabbit hair "all over Canada" from as many as 2,200 suppliers, his yearly purchases averaging from 12,000 to 15,000 pounds (R. 26). The witness then described the "clipping" and "plucking" methods employed in harvesting Angora wool, stating that, in the clipping process, the animal is first brushed to straighten up the hair, which is then clipped by means of shears to certain lengths, and that, in the plucking method, the hair is removed from the animal by seizing it and jerking it out in small bundles (R. 31–32).

Pertinent to a determination of whether the imported wool was "scoured" is the following testimony of plaintiff's witness:

Q. Can you tell us something about the nature of the Angora rabbit, about its habits, insofar as it may bear upon the condition of the wool as it finally is harvested?

\* \* \* \* \* \* \*

THE WITNESS: The Angora is a very clean animal. It keeps itself clean by licking its fur with its tongue. \* \* \*

\* \* \* \* \* \* \*

Q. Will you tell the court what measures, if any, are taken in connection with the housing of Angora rabbits so as to prevent the hair or wool from becoming soiled?—A. Well, they have hay feeders. Hay is given rabbits all the time, and these are specially constructed so it cannot get on the rabbit, except small quantities. It is put behind wire and the rabbit has to pull it out to eat it. It isn't something thrown in to the rabbit. It is put separately in a corner with wire. The rabbit pulls it through the wire.

Q. Is there any precaution taken to prevent manure, for instance, from soiling the wool?—A. They use wire bottom pens. The manure falls through. (R. 32–33.)

Plaintiff's witness then testified as follows:

Q. What is meant by grooming or brushing the rabbit?—A. Grooming or brushing the rabbit, the rabbit is placed on a table and is brushed to straighten the hair out, and to take any specks of hay or grain out of the wool to make the wool——

Q. The kind of debris that would be removed by brushing would consist of hay and grain?—A. Yes, the stuff the animal came in contact with. (R. 35.)

\* \* \* \* \* \* \*

Q. \* \* \* In connection with the clipping operation, would the brushing of the fibers be of any other value other than to remove the foreign matter?—A. That is all.

\* \* \* \* \* \* \*

Q. Are Angora rabbits ever washed in any way?—A. No.

Q. Is any kind of powder ever used on an Angora rabbit?—A. I have never known it to be.

Q. No powder is ever used for cleaning the rabbit or cleaning the wool?—A. No.

Q. Is any kind of chemical or water, or powder used on the wool after it has been harvested?—A. No. (R. 38.)

The witness further testified that, if proper precautions were taken in the care and management of Angora, clean wool would be harvested without brushing, although this would be the exceptional case (R. 61, 64).

Plaintiff's witness further stated that sometimes the hair on the animal becomes matted, caused by permitting the animal to go indefinitely unbrushed. He stated, however, that, in cases where some hairs have become soiled, they are never cleaned up by the use of any substance but are merely cut off and discarded, and, further, that if any soil should appear on a "mat," rather than on a few hairs, the entire mat is not thrown away but that there is likewise no attempt to clean up the soiled portion on the mat (R. 39).

The witness then stated that the rabbit hair contained in plaintiff's exhibits 1 to 4 was representative of the imported merchandise (R. 40).

On cross-examination, plaintiff's witness Hodgson stated that, ordinarily, the rabbit's wool is brushed or groomed only before it is clipped or plucked; that the brushing is a cleaning process, which is necessary to prevent the hair on the animal from becoming matted; and that the animal is brushed according to the length of the wool (R. 44–47). He further testified that, after the wool has been clipped or plucked from the animal, other than being graded or sorted into paper bags, as the clipping or plucking process proceeds, it is not further processed in any way before shipment (R. 48–49) and that the cleaning of the Angora rabbit hair by brushing out the foreign matter prepares it for immediate use by the mill without any further cleaning (R. 58).

Plaintiff's witness Froberg, who had experience in the harvesting of Angora rabbit hair as the owner of a rabbitry in Massachusetts, confirmed the testimony of the previous witness that the animals are brushed before plucking or clipping, and sometimes in between, to get a "longer, nicer fibre" (R. 65). She stated that, in so doing, a regular nylon hair brush is used, as would be employed by one for personal use. The witness also further testified that the wool is sorted, while being plucked, into different grades. When shown a sample of Angora hair which had become stained (plaintiff's illustrative exhibit 7), the witness stated, as had the previous witness, that no attempt would be made to clean the soiled fibers, but that they would be merely cut off and discarded and the rest placed in the plucking bag according to grade (R. 67). She was also in agreement with previous testimony that the Angora rabbit is a very clean animal and outlined the precautions taken by her in the housing of such animals to prevent the wool from becoming soiled, including the use of specially constructed hay feeders to prevent particles of hay (plaintiff's illustrative exhibit 8) from getting on the rabbit and the

use of wire bottom pens to prevent manure from soiling the wool. In conclusion, she stated that she never washed the animals, nor used any powder on them, and that no substance was ever employed to clean the wool after it had been harvested.

Plaintiff's witness Whynot has been engaged in the raising of Angora rabbits and the harvesting of wool therefrom since 1932, having had at one time as many as 1,500 animals in the rabbitry which she helped manage. She, too, testified as to the housing precautions taken for producing clean Angora wool. The witness likewise stated that she never used any cleansing powders on the Angora rabbits or on the wool after the animal was plucked or sheared (R. 75); and that the rabbits were never washed and no attempt was made to clean them in any way other than brushing, which she stated was done only once, just before the animal was clipped or plucked.

The final witness called by the plaintiff was James H. Kennedy, Jr., a bachelor of science in textile engineering and presently professor and chairman of the Textile Manufacturing Division at Lowell Textile Institute, Lowell, Mass. In addition to his activities at the institute, the witness operates a textile consulting business which brings him in contact with a great many mills all over the country. A great deal of his testimony concerned the meaning, as understood by him, of various "terms" found in the tariff act relative to the subject matter here under consideration. He explained that "shaking" is performed by a wool sorter who vigorously shakes a fleece to free it from short fibers, bits of manure, and short pieces of wool that might have adhered to the fleece when rolled into bundles, incidentally getting rid of a great deal of chaff (R. 79).

The witness then described what is known as "willowing," wherein a machine designated as "Box Top Willow" (plaintiff's illustrative exhibit 9) is employed to "willow" or open up wool. In this operation, the wool material is placed on an apron or feed sheet which carries the wool into certain feed rolls. These feed rolls hold onto the wool, while a cylinder or cone, containing teeth spaced 2 or 3 inches apart, rotates at a very high rate of speed, possibly 500 revolutions a minute, opening up the wool and thus giving it a brushing or opening action (R. 80). The purpose in opening up the wool is to make it easier to get at the fibers and clean them in the scouring operation which follows, incidentally getting rid of chaff and other unwanted material.

Plaintiff's witness further explained that "burr-picking" is an operation "that removes burrs," also vegetable matter, twigs, and other foreign matter picked up by sheep in grazing. The witness then described the working operations of a so-called "multiplex burr picker" (plaintiff's illustrative exhibit 11) used in the removal of foreign matter from sheep wool and which, in a mechanical way, removes

unwanted material as does the hand brushing of the Angora rabbit hair here indicated (R. 87–90).

Plaintiff's witness described "scouring" as "a chemical means of getting rid of solubles, * * * wool grease or dirt, but certainly not vegetable matter or anything of that nature, only grease which is coated over the fibre as it is grown, plus dirt, which is soluble" (R. 95). He thus distinguished "scouring" from the "willowing" or dusting operation, which he stated depends entirely upon mechanical separation of foreign vegetable matter or other unwanted material but which, unlike the scouring operation, does not take out of the wool any appreciable amount of grease. The witness further described the "carbonizing" process as another chemical process that is used to destroy vegetable matter in wool (R. 97). In the opinion of the witness, the imported Angora rabbit wool was not "scoured" wool, in that it still contained its natural grease, unlike scoured wool (defendant's illustrative exhibit C), from which the natural grease has been removed (R. 102–103). This witness had never heard of the phrase "scoured" Angora rabbit hair (R. 112).

The sole issue in this case is whether the removal of the vegetable fibers and other foreign matter from the Angora rabbit wool by the purely mechanical means of brushing the hair results in "scoured" wool or hair within the meaning of paragraph 1101 (c) (3) of the Tariff Act of 1930, as amended, *supra*. In this connection, it will be observed that the aforesaid paragraph defines "scoured" wools as such as have been "otherwise cleansed" than by washing with water only on the animal's back or on the skin. But said paragraph specifically excludes from the term "otherwise cleansed" therein the mechanical processes of "shaking," "willowing," and "burr-picking." The gist of the testimony of plaintiff's witnesses in this case is that the brushing of the Angora rabbit hair is no more a cleansing process than is the "shaking," "willowing," or "burr-picking" of wool. It would thus appear that the brushing operation in the cleansing of the Angora rabbit hair, likewise a mere mechanical means of getting rid of foreign material, is also excluded from the type of processes contemplated under the phrase "otherwise cleansed" for scoured wools.

That Congress did not intend that merchandise such as that at bar should be dutiable as "scoured" wool is indicated by the legislative history of the Tariff Act of 1930 (H. R. 2667) with reference to "scoured" wools. It appears that the attention of the legislators was called to the fact that certain wools, cleansed *mechanically* for the purpose of removing dirt and soil, would undoubtedly be covered by the definition in H. R. 2667, as originally proposed, as wools which had been "otherwise cleansed," and, therefore, dutiable as "scoured" wools. See Hearings Before a Subcommittee of the Committee on Finance, United States Senate, 71st Congress, 1st session, volume XI,

schedule 11, page 146, and following pages. As finally enacted, however, the provision for "scoured" wools "otherwise cleansed" exempted from the latter term those wools which were cleansed by mechanical means, namely, "shaking," "willowing," and "burr-picking."

Where a provision in a tariff bill, as originally proposed, would be applicable to certain merchandise, but such provision is omitted from the bill, as finally enacted, such a circumstance is an indication that the Congress did not intend to accomplish the purpose of the originally proposed legislation. *Edgar Allen Steel Co. (Inc.) et al.* v. *United States*, 16 Ct. Cust. Appls. 26, T. D. 42715. So, too, if a broad provision, originally proposed in a bill covering "scoured" wools, such as those "otherwise cleansed," although not omitted, is narrowed in its final enactment so as to provide for mechanical process of cleaning ("shaking," "willowing," and "burr-picking"), it must be presumed that the Congress intended to exempt from the provision for "scoured" wools such as have been cleaned by mechanical operations. Likewise, in the case at bar, the mechanical process of hand brushing the Angora rabbit wool, which does not cleanse the hair of grease or dirt, but which has for its purpose only the removal of unwanted foreign material and the obtaining of uniformity of length of hair in clipping, does not constitute "scoured" Angora rabbit hair.

In the case at bar, the hand brushing of the Angora rabbit hair accomplishes the same purpose as does the "willowing" and "burr-picking" of wool by machine. In the construction of tariff statutes, anomalous results should be avoided. *Blass Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 481, T. D. 40692; *United States* v. *J. M. Lehman Co., Inc.*, 22 C. C. P. A. (Customs) 106, T. D. 47081. To hold that wools which have been thoroughly cleansed mechanically by machine, such as in the case of "willowing" and "burr-picking," should not be held dutiable as "scoured" wools, but that wools subjected to the less severe mechanical operation of hand brushing should be dutiable as such, would, in our opinion, result in an anomolous finding, a situation not intended by the Congress.

The uncontradicted testimony of plaintiff's witness Kennedy is to the effect that "scouring" is "a chemical means of getting rid of solubles, * * * wool grease or dirt," but that such process does not refer to the mechanical one of removing vegetable matter or other unwanted material. In this connection, all of the plaintiff's witnesses were in agreement that Angora rabbits are not washed in any way, nor is any cleansing powder used on them, and, further, that no chemical, water, or powder is ever used on the wool after it is harvested. Further, the testimony of plaintiff's witnesses that the imported Angora rabbit hair has not been cleaned in any way, beyond that of the mechanical operation of brushing, has not been overcome by any evidence to the contrary on the part of the defendant. Further sup-

porting the plaintiff's claim is the uncontradicted testimony that the cleansing of the Angora rabbit hair by brushing out the foreign matter prepares it for immediate use by the mills, without any additional cleaning.

We are of opinion that the record in this case supports a conclusion that the imported rabbit hair is not "scoured" within the meaning of paragraph 1101 (c) (3) of the Tariff Act of 1930, as amended, *supra*, and that the plaintiff in this case has overcome the presumption of correctness attaching to the collector's classification of the merchandise under paragraph 1102 (b) of the said act as "hair of the Angora goat, * * * and other like animals, * * * scoured."

Plaintiff in this case concedes that the merchandise has been "sorted." Accordingly, on the basis of the record here presented, we hold the imported Angora rabbit hair properly dutiable under paragraph 1102 (b) of the Tariff Act of 1930 as "hair of the Angora goat, * * * and other like animals," sorted, not scoured, at the rate of 35 cents per pound of clean content, as claimed. To the extent indicated, the protest is sustained. All other claims are overruled.

Judgment will be rendered accordingly.