## BAYERSDORFER & CO. *v.* UNITED STATES (No. 1669).[1]

1. CONSTRUCTION, PARAGRAPH 347, TARIFF ACT OF 1913.

    The expression "artificial and ornamental" as applied to flowers, paragraph 347, tariff act of 1913, is plain and unambiguous. A literal interpretation—giving the word "and" its proper conjunctive, and not a disjunctive, meaning—is not repugnant to the manifest legislative purpose and produces no absurd or unjust results. It means what it says, viz, that an article to be dutiable thereunder must be both artificial and ornamental.

2. CONSTRUCTION AIDED BY CONTEXT.

    The use of the expression "artificial or ornamental feathers" in another part of the paragraph indicates that Congress carefully expressed a disjunctive meaning in one place and a conjunctive one in another.

3. CONSTRUCTION AIDED BY LEGISLATIVE HISTORY.

    The specification, artificial *and* ornamental flowers, tariff acts of 1883, 1890, and 1894; the change to artificial *or* ornamental, tariff acts of 1897 and 1909; and the return to artificial *and* ornamental, tariff act of 1913, indicate that Congress has been discriminating in its use of the conjunctive and disjunctive.

4. CONSTRUCTION—CONGRESS LEGISLATES IN THE LIGHT OF ADMINISTRATIVE AND JUDICIAL INTERPRETATION.

    Congress, when it passed the tariff act of 1913, must be presumed to have known that immortelles had been administratively and judicially classified otherwise than as artificial and ornamental flowers and could have written the paragraph to include them had it so desired.

5. IMMORTELLES, DRIED AND DYED, HOW DUTIABLE.

    Dried and dyed immortelles are not dutiable as unenumerated articles under paragraph 385, or as artificial and ornamental flowers under paragraph 347, but are dutiable by similitude as preserved cut flowers under paragraph 210, tariff act of 1913.

---

[1] Reported in T. D. 36390 (30 Treas. Dec., 766).

6. WREATHS OF DRIED AND DYED IMMORTELLES, HOW DUTIABLE.

Wreaths of dried and dyed immortelles, with straw frames, the frames being of minor value, are, by virtue of paragraph 386, which provides that certain mixed-material articles shall be assessed at the rate borne by the material of chief value, dutiable at the same rate as are preserved cut flowers under paragraph 210, tariff act of 1913.

United States Court of Customs Appeals, May 1, 1916.

APPEAL from Board of United States General Appraisers. Abstract 38953.

[Reversed.]

*Walden & Webster* (*Henry J. Webster* of counsel) for appellants.

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence* and *Robert Hardin* n, special attorneys, of counsel), for the United States.

[Oral argument Apr. 13, 1916, by Mr. Webster and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise is natural flowers (immortelles) dried and dyed, and wreaths composed of the same having a straw frame. As to both it is conceded they are ornamental but not artificial. Duty was assessed thereon at 60 per cent ad valorem under paragraph 347 of the tariff act of 1913 as ornamental flowers, and as wreaths wholly or in chief value thereof. This assessment was upheld by the Board of General Appraisers.

They were claimed by the importers to be dutiable under paragraph 210 as cut flowers, preserved or fresh, either directly or, by similitude, or as unenumerated articles under paragraph 385, but in this court the importers chiefly rely upon paragraph 210.

The real question is whether the term "artificial and ornamental * * * flowers" in paragraph 347 requires flowers classifiable thereunder to be artificial *and* ornamental, the contention of the importers being that *both* characteristics are indispensable to such classification; while the Government insists that the word "and" is used in the sense of "or" and therefore that the possession of *either* of these characteristics is only requisite.

The relevant part of said paragraph 347 is as follows:

347. Feathers and downs, on the skin or otherwise, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this section, 20 per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, and not suitable for use as millinery ornaments, including quilts of down, and manufactures of down, 40 per centum ad valorem; artificial or ornamental feathers suitable for use as millinery ornaments, artificial and ornamental fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this section, 60 per centum ad valorem; boas, boutonnieres, wreaths, and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other material herein mentioned, 60 per centum ad valorem; * * *.

It is at once obvious that unless the conjunctive "and" is read in the sense of the disjunctive "or" in the expression "artificial and ornamental fruits, * * * flowers," etc., as the Government claims, the grammatical construction sustains the importers' position, because the rule is well settled that the lawmaker is presumed to know the meaning of words and the rules of grammar and that a statute will be read and understood accordingly, unless it is apparent that something different was intended. United States v. Goldenberg (168 U. S., 95); Lewis's Sutherland Statutory Construction (sec. 408); United States v. Cohn (3 Ct. Cust. Appls., 273; T. D. 32571).

In determining whether something different was intended the context and purpose of the statute will be considered. If the result of a grammatical construction is repugnant to the manifest legislative purpose or produces absurd or unjust results, the strict grammatical sense may be modified, extended, or abridged as is found necessary to accomplish the clearly ascertainable legislative purpose. Lewis's Sutherland Statutory Construction (secs. 408 and 489 and cases cited); Hensel v. United States (3 Ct. Cust. Appls., 117; T. D. 32366); United States v. Palm, Fechteler & Co. (4 Ct. Cust. Appls., 1; T. D. 33195).

It has been judicially stated that—

The popular use of "or" and "and" is so loose and so frequently inaccuarate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words and one read in place of the other in deference to the meaning of the context.

See Lewis's Sutherland Statutory Construction (sec. 397 and cases cited); Endlich on Interpretation of Statutes (sec. 303); Words and Phrases Judicially Defined (West Publishing Co.), under "and" and "or," citations and discussion; Union Insurance Company v. United States (73 U. S., 759); Manson v. Dayton (153 Fed., 269).

When the meaning is plain, the courts can not look to the statutes which have been revised to see if Congress erred in that revision, but may do so when necessary to construe doubtful language used in expressing the meaning of Congress.

United States v. Bowen (100 U. S., 508, 513); Arthur v. Dodge (101 U. S., 34); Vietor v. Arthur (104 U. S., 498); Bate Refrigerating Co. v. Sulzberger (157 U. S., 1, 33).

If the expression "artificial and ornamental fruits, grains, leaves, flowers, and stems, or parts thereof" in paragraph 347 be considered as if it were an entirely new enactment with no previous legislative or judicial history, we think it could not be fairly argued that the meaning was doubtful or ambiguous. Artificial *and* ornamental flowers without doubt grammatically clearly means flowers that are *both* artificial and ornamental. We can therefore only justify a holding that "and" means "or" by finding that the congressional purpose is not accomplished unless so interpreted.

The initial evidence of the legislative purpose is the paragraph itself. It provides (*a*) for feathers and downs, crude, not dressed, colored, or advanced or manufactured, and not specially provided for; (*b*) for the same if dressed, colored, or advanced or manufactured and not suitable for use as millinery ornaments; (*c*) for artificial *or* ornamental feathers suitable for use as millinery ornaments; (*d*) for artificial *and* ornamental fruits, grains, leaves, and flowers and stems or parts thereof, of whatever material composed; and (*e*) for boas, boutonnieres, wreaths, and all articles not specially provided for composed wholly or in chief value of any of the feathers, flowers, leaves, or other material mentioned in the paragraph.

It may be said that the paragraph seems to have been drafted with precision and with due regard to grammatical construction. The fact that the expression "artificial *and* ornamental" is immediately preceded by that of "artificial *or* ornamental" is indicative of this precision, as it was clearly thereby intended that *either* artificial *or* ornamental feathers suitable for use as millinery ornaments were to be classified thereunder. The described fruits, flowers, etc., were also to be there classified, whether or not suitable for use as such ornaments, and boas, boutonnieres, and wreaths made of either artificial or ornamental feathers or of the described fruits and flowers were to pay the same rate of duty as their component material. While this paragraph is often referred to as the millinery paragraph, it is evident upon careful examination that such ornaments are but a part, and perhaps a small part, of the merchandise covered thereby, for it is common knowledge that artificial and ornamental fruits, grains, leaves, flowers and stems, and articles made therefrom have other varied and large uses. So far as may be discovered from the paragraph itself, it is consistent with the legislative purpose therein expressed that "and" was designedly used in its grammatical sense. It is not suggested nor, indeed, does it appear that either absurd or unjust results would follow if it be given this interpretation, neither is it claimed, nor does it appear, that the consequences thereof are illogical or repugnant to other provisions of the statute.

The expression "of whatever material composed" is confirmatory of this view, as it would hardly be appropriate if natural flowers, leaves, grains, or fruits were intended to be classified thereunder.

The suggestion made by the Government that Congress was not asked to change *or* to *and* in the expression "artificial or ornamental" found in the preceding act, and later herein referred to, is not persuasive, because to adopt this line of reasoning might suggest doubts as to the accepted meaning of many statutory enactments.

Assuming for the purposes of this opinion, however, that there is some reason why we should consider previous enactments *in pari materia* for the purpose of ascertaining the meaning of what does not seem ambiguous, we have examined prior tariff laws.

In the act of 1883, paragraph 429, provision was made for feathers of all kinds, dressed, colored, or manufactured, including dressed and finished birds for millinery ornaments, and "artificial and ornamental feathers and flowers, or parts thereof, of whatever material composed, for millinery use, not specially enumerated."

The act of 1890, paragraph 443, related to like feathers and downs of all kinds and birds suitable for millinery ornaments, and "artificial and ornamental feathers and flowers, or parts thereof, of whatever material composed, not specially provided for."

The act of 1894, paragraph 328, contained similar provision for feathers and downs and birds suitable for millinery ornaments, "and artificial and ornamental feathers, fruits, grains, leaves, flowers and stems, or parts thereof, of whatever material composed, suitable for millinery use, not specially provided for."

We pause here to note that the provisions of these three statutes were for "artificial *and* ornamental" articles, the earliest and the latest containing also the limitation "for millinery use" or suitable therefor, while that of 1890 omitted that provision.

The act of 1897, paragraph 425, as to feathers and downs, was of similar import and declared that "artificial or ornamental feathers, fruits, grains, leaves, flowers and stems or parts thereof, of whatever material composed" should be dutiable at the same rate as millinery ornaments without providing that they must be suitable for or used as such.

The act of 1909, paragraph 438, was identical as to rates of duty with paragraph 425 of the preceding act and in addition fixed the same rate of duty upon "boas, boutonnieres, wreaths, and all articles not specially provided for in this section composed wholly or in chief value of any of the feathers, flowers, leaves, or other materials or articles herein mentioned."

It is therefore to be observed that the three statutes first above mentioned contained the expression "artificial *and* ornamental" and that the two last above mentioned read "artificial *or* ornamental," and that the paragraph under consideration provides for "artificial *or* ornamental feathers, suitable for use as millinery ornaments" and omits this limitation as to fruits, grains, leaves, and flowers and stems or parts thereof, requiring them to be only artificial *and* ornamental.

As already suggested with reference to paragraph 347, the changes in the cognate paragraphs of the acts mentioned seem to indicate care and precision in the language selected, and do not suggest a loose and careless use thereof which has justified the courts in other cases as sometimes treating "and" and "or" as interchangeable. In other words, the change from "and" in the three statutes first mentioned to "or" in the two later ones seems to have been designedly made, and by the same token the adoption in paragraph 347 of

the language of the earlier statutes seems equally premeditated and deliberate. Our attention has not been called to nor have we found any adjudication that may be said to have considered the precise question that is before us.

Under the act of 1883 the Treasury Department apparently held that natural immortelles undyed were entitled to free entry and that dyed immortelles were dutiable as flowers advanced in value (the dyeing being regarded as refining) under paragraph 94. This paragraph later (in 1890) seems to have become the crude-drug paragraph, but was not, in 1883, in terms limited to drugs. See T. D. 6090 and T. D. 7370.

Under the act of 1890 the following decisions were rendered by the Board of General Appraisers:

Dried flowers invoiced as immortelles, some of which had been bleached and others dyed, were held dutiable as articles in whole or in part manufactured under section 4. They were claimed to be entitled to free entry under the crude-drug paragraph. G. A. 977 (T. D. 12115).

In G. A. 1755 (T. D. 13375) yellow immortelles in a natural state, dyed immortelles but crude, dyed grasses, and heads and stalks of bearded wheat artificially bleached were under consideration. The three first-named articles were claimed to be entitled to free entry under paragraph 653 of the act, which provided for moss, seaweeds, and vegetable substances crude or unmanufactured, and the bleached wheat as a nonenumerated manufactured article under section 4. The board held that the dyed flowers and bleached heads and stalks of wheat were dutiable as manufactured articles under section 4, following T. D. 12115, last cited, and that the natural immortelles and crude dyed grasses were entitled to free entry, as claimed.

In G. A. 2109 (T. D. 14058), which was decided April 25, 1893, bunches and wreaths of natural flowers were the subject of importation. They had been assessed as unenumerated manufactured articles and claimed to be drugs. The assessment was sustained.

In G. A. 2562 (T. D. 14933), decided March 26, 1894, painted palm leaves and flowers and grasses dyed or otherwise manufactured were under consideration and held to be manufactured articles unenumerated. The board said that since the decision in G. A. 2109 (T. D. 14058) they had "in a corresponding manner decided quite a number of cases involving the same kind of goods. As far as we are aware, there has been no appeal from any of said decisions."

Under paragraph 328 of the act of 1894, in G. A. 3014 (T. D. 15990), dried and dyed natural flowers (immortelles) were assessed as unenumerated articles wholly or partly manufactured. Relying upon their decision in T. D. 14058, *supra*, the board affirmed the assessment, the claim made being that they were dutiable as flowers under the drug paragraph.

Under the last-mentioned act, in G. A. 3214 (T. D. 16425), the board had before it crude ornamental feathers, not artificial, suitable for milliners' use and not dressed, colored, or manufactured. They were assessed for duty under paragraph 328 as ornamental feathers suitable for milliners' use and claimed to be entitled to free entry under paragraph 477, which related to feathers of all kinds not dressed, colored, or manufactured. In its opinion the board among other things said:

In reaching this conclusion we are influenced by the fact that both the disjunctive "or" and the copulative conjunctive "and" are used in paragraph 328, which fact would indicate that Congress intended the language of that paragraph to be construed as it is grammatically expressed.

In support of its conclusion the case of *In re* Gribbon (55 Fed., 874) was cited, where the term "embroidered and hemstitched handkerchiefs" was held to include only such handkerchiefs as were both embroidered and hemstitched, the board saying in substance that the two cases were sufficiently analogous to warrant the holding that the term "artificial and ornamental feathers and flowers" included only such flowers and feathers as were both artificial and ornamental.

It should, however, be stated that in none of these cases, except the one last referred to, was the question discussed as to whether in the expression "artificial and ornamental" "and" was used in the sense of "or." That immortelles, natural or dyed, were dutiable thereunder does not, however, appear to have been suggested or claimed, and it would seem by reason of the board's quoted statement in T. D. 14933 that such immortelles had not been classified or claimed to be classifiable under paragraph 443 of the act of 1890, and that they were not classified under paragraph 328 of the act of 1894. It should also be observed that in T. D. 15990 the immortelles were found to be for florists' use.

Following the changed construction in the act of 1897 from "and" to "or," dyed immortelles were under that ·act and the act of 1909 classified as ornamental flowers. See *In re* Beckert, Abstract 25349 (T. D. 31524), where the natural dried immortelles were held dutiable as cut flowers preserved under paragraph 263 of the act of 1909, and the dyed ones under paragraph 438. See also *In re* American Express Co., Abstract 25903 (T. D. 31708); Bayersdorfer, Abstract 31381 (T. D. 33217); and International Forwarding Co., Abstract 31863 (T. D. 33325), and there are others of like import.

The two board decisions last cited were before this court and are reported in 4 Court of Customs Appeals, at pages 446 and 455, respectively. We there held that dyed immortelles were dutiable under paragraph 438 of the act of 1909, on the ground that they were ornamental flowers within the scope of that paragraph. In the latter of these cases, natural undyed immortelles were also a part of

the importation. They had been assessed by the collector as preserved cut flowers under paragraph 263, and no question as to the correctness of that assessment was made in this court. It was, however, claimed that the dyed immortelles were dutiable under the same paragraph. The court concluded that the term "ornamental' flowers not specially provided for" covered the dyed immortelles.

This survey of rulings and decisions indicates that for the life of three tariff acts and while the statutory language was "artificial and ornamental," the law was at least administered upon the theory that "and" did not mean "or"; that under the two subsequent acts "or" did not mean "and," and we think in view of what has already been said, if indeed it be assumed that there is any uncertainty or ambiguity in paragraph 437, Congress intended to reenact, so far as it did reenact the same, the language of the earlier acts in the sense of, and in view of, the interpretation which had been placed thereon. In other words, it intended to use the earlier language with the expectation that it would receive the same interpretation that had been given thereto. It must be presumed that Congress was aware of the classification of the crude, uncolored immortelles as crude vegetable substances, and of the dyed immortelles as unenumerated manufactured articles, and that the expression "artificial *and* ornamental" in the earlier paragraphs was not understood to mean "artificial *or* ornamental."

Treating the expression under consideration as a reenactment of the same language in the earlier acts, the rule of interpretation is that "the courts will follow the construction which they received when previously in force. The legislature will be presumed to know the effect which such statutes originally had and by reenactment to intend they should again have the same effect." Lewis's Sutherland Statutory Construction (sec. 403 and cases cited), Ahlbrecht *v.* United States (2 Ct. Cust. Appls., 471; T. D. 32226).

We think there is no escape from the conclusion that "and" in the expression under consideration was not used in the sense of "or"; that Congress deliberately intended to provide that artificial or ornamental feathers suitable for millinery use should pay the comparatively high duty rate of 60 per cent ad valorem, but the rate should not apply to fruits, grains, flowers, leaves, and stems, regardless of use, unless they are both artificial *and* ornamental, and it follows that the merchandise was erroneously classified under paragraph 347.

There remains for determination the question of proper classification. The importers' protest, as well as assignments of error, claim the merchandise to be dutiable directly or by similitude or according to the component material of chief value at 25 per cent ad valorem under paragraph 210 or, in the alternative, as unenu-

merated manufactured or unmanufactured articles under paragraph 385, and in this court the importers express the belief that the classification should be under paragraph 210 by similitude. The material part of that paragraph is as follows:

210. Orchids  *  *  *  and cut flowers, preserved or fresh, 25 per centum ad valorem.  *  *  *

While there was no evidence upon that question before the board, yet we take cognizance of the fact that in International Forwarding Co. *v.* United States (4 Ct. Cust. Appls., 455; T. D. 33878) we held that dyeing was not properly a preserving process. The question of similitude was not there raised, and it being found that the dyed immortelles were directly dutiable as ornamental flowers it could not, if made, have availed. Now, natural dried immortelles would seem to be cut flowers within paragraph 210. In the absence of proof as to whether those before us are preserved within the meaning of that paragraph, the question is not before us. They are, however, cut, dried natural flowers, to which nothing has been done except the application thereto of an artificial coloring matter. While this has produced a striking change in the color of the flowers, nevertheless their quality, their texture, and their use, although the quality has been doubtless improved and the use largely widened, are still very similar to what they were before the flowers were colored, and they are still in form and shape and, in the material that makes their physical structure, flowers produced by nature, to the natural material of which a relatively small amount of coloring matter has been artificially added. The value of the dye so added as compared with the value of the flowers before being subjected to that treatment does not appear, but we think that in material, quality, texture, and use it can not well be said that they are not within the statute greatly similar to natural flowers. Indeed nature gives to many of its flowers colors resembling the artificial colors imparted to the immortelles in this case, and it is within common knowledge that before being dyed the natural dried immortelles are devoted to uses similar or identical with those to which the dyed immortelles are applied, although, by reason of their changed color, the dyed articles undoubtedly have, as already stated. a much wider use.

We have no hesitation in concluding that these dyed immortelles are properly classifiable by similitude as preserved cut flowers under the paragraph.

As to the wreaths composed of such dried and dyed immortelles the evidence is that the straw frame is of little value as compared with that of the flowers composing the wreaths and the wreaths themselves are without doubt unenumerated manufactured articles. But paragraph 386 provides that "on articles not enumerated, manu-

factured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words 'component material of chief value,' wherever used in this section, shall be held to mean that component material which shall exceed in value any other single component material of the article."

Applying that language to these wreaths it at once appears that their component material of chief value is the dried and dyed immortelles: therefore the flowers themselves being dutiable by similitude under paragraph 210, it results that the wreaths are also classifiable thereunder by force of paragraph 386.

The judgment of the Board of General Appraisers is *reversed*.