LEVY CO. v. UNITED STATES (No. 2434)[1]

MILLINERY ORNAMENTS—ARTIFICIAL FEATHERS OF DYED GRASS.

Merchandise invoiced as "fancy grasses"—grass which has been dyed and then "stemmed" or "branched up" on wire with the aid of silk, paper, or cotton, so as to resemble feathers—used in trimming women's hats, was properly classified with the millinery ornaments of paragraph 347, tariff act of 1913, rather than as nonenumerated manufactures, under paragraph 385.

United States Court of Customs Appeals, March 23, 1925

APPEAL from Board of United States General Appraisers, Abstract 47442

[Affirmed.]

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.
*William W. Hoppin*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

[Oral argument January 16, 1925, by Mr. Place and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BLAND, and HATFIELD, Associate Judges; BARBER, Associate Judge, participating in the decision by agreement of counsel

BARBER, Judge, delivered the opinion of the court:

This is an appeal by importer from the classification of certain merchandise under paragraph 347 of the act of 1913, as a result of which duty was assessed thereon at the rate of 60 per cent ad valorem.

There were seven entries but the claims in the protest are limited to four items numbered 3530, 3535, 3536, and 3537 covered by entry 711443.

The merchandise covered by these entries consists of various articles which are made as follows: Natural grasses are dyed and then "stemmed" or "branched up" on wire with the aid of paper, silk, or cotton. The grasses are the component material of chief value. In their imported condition the articles are used in trimming ladies' hats, sometimes alone, but more often in combination with other things such as artificial fruits, leaves, flowers, etc. They were invoiced as "fancy grasses," and are represented by four exhibits.

The collector classified the goods under paragraph 347, probably as artificial feathers. The relevant part of the paragraph is as follows:

* * *; artificial or ornamental feathers suitable for use as millinery ornaments, artificial and ornamental fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this section, 60 per centum ad valorem; * * * and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other material herein mentioned, 60 per centum ad valorem. * * *

---

[1] T. D. 40782.

It will be noted that the paragraph provides:

(a) For artificial or ornamental feathers, suitable for use as millinery ornaments.

(b) For artificial and ornamental fruits, grains, leaves, flowers, etc., of whatever material composed, not specially provided for.

(c) For all articles not specially provided for, composed wholly or in chief value of any of the feathers, flowers, leaves, etc., above mentioned.

So that, if the importation here falls within any of these three subdivisions of the paragraph, it was classifiable thereunder.

Although other claims were made in its protest, importer here relies upon paragraph 385 of the act of 1913 providing for nonenumerated manufactured articles.

As we understand its contention, importer assumes that because the articles here are composed in chief value of natural grasses they are not and can not be regarded either as artificial feathers or as artificial fruits, grains, leaves, flowers, or stems under the paragraph.

Based on such assumption, it contends that not being artificial, although concededly ornamental, the articles are not classifiable as artificial feathers or as artificial and ornamental fruits, grains, leaves, and flowers, citing Bayersdorfer & Co. *v.* United States (7 Ct. Cust. Appls. 66; T. D. 36390). That case, however, related to natural flowers which had been dyed and is authority only for the proposition that our subdivision (b) of the paragraph covers only artificial and ornamental flowers and not natural and ornamental flowers.

But we are clear that importer's assumption is fallacious and that the typical exhibits here, being made of grasses and wire, and in addition of either paper, silk, or cotton, are completely manufactured articles. If they simulate feathers, fruits, grains, leaves, flowers, and stems, or parts thereof, they are such things artificially produced; that is, they are artificial articles within the paragraph.

At the hearing before the Board of General Appraisers the Government called no witnesses. The importer called one who testified. The record in an earlier case, In re Zucker & Josephy, theretofore heard by the board, and reported in Abstract 45454, volume 42, of the TREASURY DECISIONS, page 398, was then offered by importer and received in evidence.

By reason of the fact that much of the testimony so imported into the record relates to articles apparently not very like those here involved, it is not easy to understand the application of some of the evidence in that case to the exhibits here.

There is, however, positive testimony of record, especially from the one witness called, that the articles here which are represented by the four exhibits simulate feathers, or more particularly simulate articles in chief value of natural feathers.

The Board of General Appraisers expressly found on the evidence that the importations " assimilate feather articles to be used in trim-

ming ladies' hats," and we think that finding is amply justified and supported by the testimony.

The effect of the finding is that these articles are composed of artificial feathers. They are, therefore, properly classifiable under our subdivision (c), as it more specifically· describes the merchandise than the paragraph relied on by the importer.

The result is that the judgment of the Board of General Appraisers is *affirmed*.