(C. D. 725)

Pacific Vegetable Oil Co. *v.* United States

United States Customs Court, Third Division

(Decided February 3, 1943)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *James F. Donnelly*, special attorneys), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Keefe, Judge: The merchandise herein consists of 38 drums imported as containers of tung oil, a duty-free merchandise. Duty was assessed thereon at 25 per centum ad valorem under paragraph 328, Tariff Act of 1930, as "cylindrical and tubular tanks or vessels." The plaintiff claims that the merchandise is entitled to free entry as American goods returned under paragraph 1615, and, by way of amendment, it is further claimed that the drums are free of duty as the usual containers of free merchandise. The entry regulations applicable to American goods returned were not complied with and that claim was not pressed.

At the trial the examiner of the merchandise at the port of Los Angeles testified for the plaintiff that the drums herein consisted of ordinary drums used as containers of oil or gasoline, being composed of metal and approximately 22 inches in diameter and 3 feet high, having a capacity of about 55 gallons; and that in his opinion such

drums were cylindrical vessels such as are provided for under paragraph 328.

The witness further testified that he is familiar with a number of other types of cylindrical vessels used as containers, the major portion being containers of gas; that such vessels vary in size, the most common being extremely heavy, measuring 10 or 12 inches in diameter and from 4 to 6 feet in length; that drums have been imported as containers within his personal knowledge for 20 years; and that the other cylindrical vessels with which he is familiar during such period are, as a rule, reimported articles, having been exported as containers of gas and returned for reuse.

The traffic manager of the importer testified that the iron drums in question are second-hand, 55-gallon capacity, and of the same type used as containers of tung oil for the past 15 years; and that such drums are roughly 2½ feet in diameter and 3 feet high.

The paragraph of the Tariff Act of 1930 at issue herein provides in part as follows:

PAR. 328. * * * cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; welded cylindrical furnaces, tubes and flues made from plate metal, whether corrugated, ribbed, or otherwise reinforced against collapsing pressure, and all other finished or unfinished iron or steel tubes not specially provided for, 25 per centum ad valorem; * * *.

Counsel for the plaintiff contends that inasmuch as the word "tube' is defined as a long, hollow, cylindrical body, the word "tubular" as used in paragraph 328 refers to an article having considerable length in proportion to its diameter; that length is an indispensable quality, without which vessels would be merely cylindrical; that cylindrical vessels are not necessarily tubular and the only special effect to be given to the specific language of Congress would be to apply it literally to such articles as are both cylindrical and tubular; and that consequently, as length is the principal distinction between cylindrical and tubular containers, the provision for "cylindrical and tubular tanks or vessels" is limited to vessels such as the Government examiner testified were 10 or 12 inches in diameter and from 4 to 6 feet long, and excluding vessels that are merely cylindrical. In support of his contention counsel relies upon the cases of *United States* v. *American Brown Boveri Electric Corp.*, 17 C. C. P. A. 329, T. D. 43776; *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022; *Maltus & Ware* v. *United States*, 6 Ct. Cust. Appls. 525, T. D. 36146; *United States* v. *Marsching*, 1 Ct. Cust. Appls. 216, T. D. 31257; *United States* v. *Marx*, 1 Ct. Cust. Appls. 152, T. D. 31210; *Lake County* v. *Rollins*, 130 U. S. 662; *United States* v. *Lexington Co.*, 232 U. S. 399; *North Coast Importing Co.* v. *United States*, 24 C. C. P. A. 182, T. D. 48644; *United States* v. *Bayersdorfer*, 7 Ct. Cust.

Appls. 66, T. D. 36390; and *Edgar Allen Steel Co. (Inc.) et al.* v. *United States,* 16 Ct. Cust. Appls. 26, T. D. 42715.

The Government contends that cylindrical drums of the type involved herein are specifically provided for under paragraph 328; that since a tube is cylindrical in form the use of the words "cylindrical and tubular," under plaintiff's theory, would imply an intent by Congress of using superfluous language, as the use of the word cylindrical would be wholly unnecessary; that the use of the words "and" and "or" in tariffs indicates that such words are interchangeable, citing *Eidlitz & Son* v. *United States,* 12 Ct. Cust. Appls. 56, T. D. 39998; *United States* v. *Merck & Co.,* 8 Ct. Cust. Appls. 137, T. D. 37269.

The Government argues further that under the Tariff Acts of 1909 and 1913 drums were provided for in "cylindrical or tubular" form; that after the disjunctive "or" had been changed to the conjunctive "and" in the Tariff Act of 1922, the courts continued to hold drums, cylindrical in form and not tubular, dutiable under paragraph 328 (citing *American Shipping Co.* v. *United States,* T. D. 43316; *Grotte* v. *United States,* T. D. 43000); that notwithstanding such decisions, in reenacting paragraph 328, Tariff Act of 1930, Congress used the language contained in the Tariff Act of 1922 without change, thereby approving the judicial interpretation placed upon the provision for "cylindrical and tubular tanks or vessels" as including drums which were cylindrical and not tubular (citing *United States* v. *Bassichis Co.* et al., 16 Ct. Cust. Appls. 410, T. D. 43133; *Kelly* v. *United States,* 17 C. C. P. A. 30, T. D. 43322.)

Government counsel calls the court's attention to the Summary of Tariff Information, 1929, which points out that the courts had held cylindrical drums to be dutiable under the provisions of paragraph 328 of the Tariff Act of 1922 where fit for further use, and Congress, having notice of such decisions at the time of enacting the Tariff Act of 1930, failed to alter or modify the language, and it is argued by counsel that Congress evidently intended drums, cylindrical in form but not tubular, to be dutiable under paragraph 328; and that inasmuch as cylindrical drums are properly dutiable under said paragraph the same are not removed from such classification by reason of being the usual containers of duty-free merchandise under the holding in the case of *MaLaughlin Gormley King Co.* v. *United States,* Abstract 25514.

The question before us here is the determination of the meaning intended by Congress in the use of the adjectives "cylindrical and tubular" in describing tanks or vessels assessed for duty under paragraph 328.

We have considered the cases cited by the plaintiff in support of the contentions relied upon and find them not applicable to the situation here before us. Three of such cases favor the Government's conten-

tions and the other case, *Edgar Allen Steel Co., supra*, was decided by a divided court and was not followed. In the Summary of Tariff Information, 1929, the foregoing decision was noted and it was stated that collectors of customs had been instructed by the Treasury Department to continue assessing accumulative duty when the merchandise contained either molybdenum or tungsten. In the Tariff Act of 1930, the language of the paragraph of the Tariff Act of 1922 at issue therein was changed so as to assure the assessment of duty upon both of said materials when either was contained in steel. Thus it is clear that Congress noted the decision and effectively changed its ruling, indicating its intention at the time of writing the provision in the act of 1922 to have the word "and" interpreted as though it were "or." In the *Bayersdorfer* case, *supra*, the court stated:

Treating the expression under consideration · as a reenactment of the same language in the earlier acts, the rule of interpretation is that "the courts will follow the construction which they received when previously in force. The legislature will be presumed to know the effect which such statutes originally had and by reenactment to intend they should again have the same effect."

In the *North Coast Importing Co.* case, *supra*, the court could not find that prior to the enactment of the Tariff Act of 1930, it had been judicially held that the merchandise of the character there involved was not a chemical compound or a chemical mixture within the meaning of those words as used in the acts of 1922 and 1930, or their predecessors, and then stated that "It is well established that the rule of legislative ratification of judicial decision extends only to the precise points judicially determined." But the court went on to state that the rule relating to long-continued administrative practice to classify the merchandise as a nonenumerated manufactured article was changed just immediately prior to the enactment of the Tariff Act of 1930. The Treasury decision notifying collectors of customs was published just 12 days before the enactment of the Tariff Act of 1930. Under such circumstances the appellate court stated:

* * * therefore it appears that Congress, before its enactment, presumptively had knowledge that the Treasury Department was of the opinion that merchandise of the character here involved should be classified under paragraph 5 of the Tariff Act of 1922.

In view of this fact we do not think that it may be said that Congress, in enacting paragraph 5 of the Tariff Act of 1930, intended to recognize and affirm the administrative practice, which apparently had prevailed for many years, in classifying merchandise such as is here involved as a nonenumerated manufacture.

The *Marx* case, *supra*, clearly favors the Government's contentions and will be discussed later. .

In considering the legislative history of the articles herein we find that prior to the Tariff Act of 1909 there was no provision for iron or steel tanks or vessels. In the notes on tariff revision, 1908, it was pointed out that wrought steel cylinders used for holding gas under

pressure were held dutiable by the courts as steel tubes. Later bottle-shaped vessels of steel, 4 feet long and 8 inches in diameter with a steel cap fitted over, and permanently closing, one end, with the other end tapering to a neck, were held to be dutiable as tubes. Comment was made upon the classification of certain tanks or reservoirs used in car lighting for holding and storing illuminating gas. The tanks were cylindrical in shape, 35 feet long and 8 feet in diameter. These tanks were assessed as manufactures of metal and claimed to be tubes. The Board of General Appraisers sustained the classification as manufacturers of metal but, upon appeal, the Circuit Court reversed the Board without opinion. Upon appeal to the Circuit Court of Appeals the decision below was sustained, also without opinion. In commenting upon the decisions of the courts the following appears in said tariff notes:

> Since the courts seem bound to classify these goods as tubes, it is suggested either that the rate of duty on tubes not specially provided for be made the same as that for metal articles wholly or partly manufactured, or that a new provision be inserted for tanks, holders, or reservoirs of cylindrical, tubular, or other shape, used for holding or storing gas or liquids; or that a proviso be added to paragraph 152 to the effect that no article shall be classified under this paragraph as a tube which is closed at either or both ends.

As the bill appeared before the House, paragraph 150 contained a provision for "cylindrical or tubular tanks or vessels, for holding gas or liquids." When before the Senate the provision was amended by the addition of the words "or other material, whether full or empty." As thus changed it became a part of the Tariff Act of 1909. In the case of *United States* v. *Marx, supra,* the court noted the changes, commenting thereon as follows:

> In brief, the House had before it for consideration certain large-sized, strongly built cylindrical or tubular metal tanks or vessels for holding gas and, possibly, liquid gases. It decided that such vessels should pay a duty of 30 percent ad valorem. The Senate had before it the same class of vessels and in its wisdom it determined that such vessels, whether they contained gases or liquids *or other material and whether full or empty,* that is, whether they were acting as containers or not, should be dutiable at the same rate. * * *.

The court further found that the Senate intended to go beyond the original purpose of the provision added by the House and make dutiable *all* vessels of a similar character for holding any sort of material and whether such vessels were full or empty.

The language inserted by Congress in the Tariff Act of 1909 was reenacted as a part of the Tariff Act of 1913. In the Tariff Information Surveys, Volume 3, before the 66th Congress, Third Session, in commenting upon the provision in the Tariff Act of 1913, paragraph 127, on page 40 of section 12 of such surveys, dealing with the subject of pipes and tubes, it is stated that:

Paragraph 127 classifies iron or steel tanks and vessels according to shape, specifying only cylindrical or tubular kinds, whereas rectangular and other shapes, not being specifically mentioned in the tariff act, come under the paragraph (167) for articles and wares wholly or partly manufactured of iron or steel not specifically provided for.

Whether the article is cylindrical, tubular, or rectangular is apparently of little tariff importance. Of greater tariff significance is the kind of material from which the article is made. Thus, tanks are made from common or black iron or steel sheets and plates, and iron or steel sheets and plates galvanized or coated with zinc, spelter, or other metals. These two classes of materials are specifically mentioned in separate paragraphs of the act of 1913, and are dutiable at 12 and 15 percent ad valorem, respectively.

In commenting upon the decisions of the courts and Treasury decisions the following statement appears in the notes:

*A barrel-shaped drum is a cylindrical vessel, and strong sheet-iron drums, of such shape or tubular*, containing binoxide of barium, both containers available for further use as receptacles, *come within this provision.* [Italics not quoted.]

In enacting the Tariff Act of 1922, Congress made a change in the provision for tanks or vessels by removing the disjunctive "or" between "cylindrical" and "tubular" and inserting the conjunctive "and" so that the provision reads: "cylindrical and tubular tanks or vessels." During the life of that act many decisions were rendered by this court holding iron or steel drums properly dutiable under the provisions of paragraph 328. In the case of *Grotte* v. *United States*, T. D. 43000, cited by counsel for the Government, a certain insulating material was imported in iron drums shown to be cylindrical in shape, and each drum having a head at both ends and capable of being sealed after the removal of its contents. Considering the language of paragraph 328 of the Tariff Act of 1922, in the provision for cylindrical and tubular tanks or vessels, the court stated that the language of prior acts was substantially the same as that in the act of 1922 and in the light of paragraph 328 "we do not see how the drums can be otherwise classified than under that paragraph."

In the Summary of Tariff Information, 1929, pages 702, 704, in connection with the assessment of duty upon iron drums, the following appears:

A so-called *spear buoy* consisting of a hollow, amphora-shaped, water-tight, metal float, equipped at the top with a tube having lamp supports and at the bottom with a device for attaching anchor chains, not cylindrical or tubular, was held dutiable under paragraph 399 rather than paragraph 328 (15 Ct. Cust. Appls. 110). Certain *metal drums*, containers of chemicals, etc., were held dutiable at 25 per cent under paragraph 328. (Ab. 46830. C. I. E. 2490, Ab. N 1861; Ab. N 6584, T. D. 43000.) *Other metal drums* where unfit for further use, have been held to be free of duty as usual containers of free or specific duty goods, rather than dutiable under this paragraph. (C. I. E. 5587, Ab. (N) 4888, 5449, 6925.)

In *Ellis* v. *United States*, 15 Ct. Cust. Appls. 110, T. D. 42187, the amphora-shaped, watertight metal float there in question was claimed dutiable as a "cylindrical and tubular tank or vessel." It was argued before the appellate court that the provision in the act of 1913 had been changed in the act of 1922 to provide for cylindrical and tubular tanks rather than cylindrical or tubular tanks, and that the tanks in question were in certain parts both cylindrical and tubular while in other sections merely tubular. The court held, however, that the merchandise was something more than a tank for holding gas or liquids and therefore excluded the buoys from classification thereunder.

At the time of the passage of the Tariff Act of 1930 Congress had before it the foregoing decisions of the courts as cited in the Summary of Tariff Information, 1929, and in reenacting the language used in paragraph 328 of the Tariff Act of 1922 without change or comment, and with full knowledge that under the previous act iron or steel drums, cylindrical in form, were held dutiable, Congress may be presumed to have intended that such drums should be classified thereunder.

In *Salomon* v. *United States*, 2 Ct. Cust. Appls. 92, T. D. 31635, the court stated that:

* * *. The rule that language employed by Congress is presumed to have been used in accordance with the construction which has been given it by long-continued practice of an administrative department or by a court is thoroughly established. * * *.

In *United States* v. *Illfelder*, 17 C. C. P. A. 197, T. D. 43646, certain small machines described by the importer as moving-picture machines designed and intended for the amusement of children only were classified as toys. The importer claimed them dutiable as optical instruments, inasmuch as the machines would project an image clearly at a distance of about 24 inches and may be used with standard-sized film. The court stated there was a long line of administrative practice and judicial authority to justify the classification of the articles as toys, and that:

This uniform line of authority, administrative and judicial, was in the mind of the Congress when the Tariff Act of 1922 was enacted. It must be presumed that the Congress, in reenacting the statute, ratified and approved such construction. * * *.

Our appellate court, in *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941, considered the classification of colored straw baskets, and commented upon a statement of the Board of General Appraisers made in a rehearing order that "an 'anomalous situation' arises from the fact that it was required to classify the bags in controversy, which are in two colors, as nonenumerated, manufactured articles at 20 per centum ad valorem, when, if they had been

plain, unpainted straw, they would have been classified under paragraph 1439 as a manufacture of straw and dutiable at 25 per centum ad valorem." As to such situation our appellate court stated:

Whether it be the fault of the tariff laws, or of the decisions of this court, or both, we agree that the position in which the board found itself, and in which we find ourselves, is not a happy one and we recognize the incongruity. The road of administering tariff legislation has never been a smooth one and incongruities are plentiful—to be avoided, to be sure, if possible, but to be taken with equanimity if unavoidable. *American Smelting and Refining Co.* v. *United States,* 12 Ct. Cust. Appls. 212, T. D. 40226.

If the question before the court, * * * were before us now, for the first time, under the present statement of facts, we might be inclined to give serious consideration to the contention that the words "not the separated fibers thereof" explained what Congress meant when it said "in their natural state," and that they did not intend to exclude from the paragraph manufactures of straw which were colored. *These decisions have been followed by those administering recent tariff legislation, and Congress, in the manufactures of straw paragraph of the Tariff Act of 1922, has used language identical with that used in the paragraph relating to the same subject-matter in the Act of 1913, notwithstanding the decisions of this court.*

*Congress, by such reenactment, has given approval of the interpretation put upon the clause by this court. United States v. Post,* 3 Ct. Cust. Appls. 260, T. D. 32568.

*If it was conceded that these decisions were erroneous, we believe it would be harmful rather than helpful to make any change, at this time, in our former rulings on this question. The courts, and this court especially, in passing upon close questions of construction in tariff legislation, have stressed the importance of uniformity of decision and of settled and well understood administrative practice. The persuasiveness of the fact that a position, technically more correct, might be arrived at by the consideration of fine distinctions when reviewed under a new statement of facts, must yield to the advantages to be derived by all parties concerned from a policy affecting the levying of customs duties, which is well understood and acquiesced in. Ulmann v. United States,* 5 Ct. Cust. Appls. 357, T. D. 34551; *United States v. Baruch,* 223 U. S. 191; *Goussios & Co. v. United States,* 2 Ct. Cust. Appls. 317, T. D. 32051. [Italics not quoted.]

See also in this connection *Schwabacher* v. *United States,* 22 C. C. P. A. 496, T. D. 47484, and *United States* v. *Bayersdorfer,* 16 Ct Cust. Appls. 43, T. D. 42717. In the former case, relative to the classification of mineral oil, the court noted that large quantities of medicinal mineral oil were imported duty free from September 1922, to the end of 1928, and was of the opinion that with this information before it, as it appeared in the Summary of Tariff Information, 1929, concerning the administrative practice in the classification of such mineral oils, Congress, in retaining in paragraph 1733 of the act of 1930 the exact language of paragraph 1633 of the act of 1922, under which such classification had been made, indicated conclusively the legislative intent upon the question and therefore no other rules of interpretation or of other doctrines need be applied.

In view of the foregoing cases relative to the legislative approval of administrative and judicial construction, we do not deem it necessary

to further discuss rules of interpretation relative to the use of the words "and" and "or." However, as the plaintiff has stressed the fact that the lexicographers define a tube as having great length in comparison to the diameter and that a tubular article necessarily would bear the same relationship, we find that all lexicographers are not agreed upon that characteristic. In the Century Dictionary and Cyclopedia, page 6521, the adjective "tubular" is defined as an article "Having the form of a tube or pipe, without reference to size." Under such definition the iron drums in question are tubular as well as cylindrical.

For the reasons stated and following the decisions cited we hold that the 28 cylindrical steel drums here before us are properly dutiable as assessed by the collector and judgment will be entered in favor of the defendant.